156 295|
102a 4582|

## GRACE v. ST. LOUIS RAILROAD COMPANY, Appellant.

### Division One, May 15, 1900.

1. **Practice:** APPELLATE: WEIGHING EVIDENCE. This court in an action at law will not weigh conflicting testimony, nor set aside a verdict where there is any substantial evidence to support it.

2. ———: TRIAL: DEMURRER TO EVIDENCE. Facts reviewed, and *held,* that a demurrer to the evidence in this case was properly overruled.

3. ———: ———: INSTRUCTIONS CONSIDERED TOGETHER. This court will not reverse for faults in an instruction which have been cured by correct instructions given on behalf of the party complaining.

4. **Street Railroad:** CARE IN OPERATING TRAINS: INSTRUCTION APPROVED. In an action by a passenger against a street railway company for injuries received while alighting from a cable car, an instruction given on behalf of the plaintiff is approved, which declared it to be the duty of defendant's servants in charge of the train to exercise a high degree of care, "such as practical and skillful railroad men would have exercised under similar circumstances."

Appeal from St. Louis County Circuit Court.—*Hon. John Rudolph Hirzel,* Judge.

AFFIRMED.

*Smith P. Galt* for appellant.

(1) The court erred in giving plaintiff's instruction numbered 1, and in refusing defendant's instruction explana-

tory thereof, for the following reasons: (a) The instruction complained of charged defendant's conductor and gripman with a higher degree of care and caution than the circumstances required. (b) The instruction declares the law to be, that if a passenger signals to either the conductor or gripman "of his intention to leave the car," and the signal is understood by the one signalled to, then it is the duty of both the conductor and gripman, from that time, to use a high degree of care that he may alight in safety, without any reference to where the car was when the signal to stop was given or how far it was from the place where it would stop in response to such signal. Such is not the law. (c) There was no evidence in the case as to what "practiced and skilled railroad men" would have done "under like circumstances" or as to what " high degree of care" they would have exercised. (d) Defendant's instruction refused would have been explanatory of, and a proper limitation on, the general and indefinite terms of plaintiff's said instruction. (2) The court, for the same reason, erred in giving plaintiff's instruction numbered 2. This instruction was also a departure from the petition. (3) The court erred in not giving instruction for a nonsuit, and in not sustaining the motion for new trial on the ground that there was no evidence to support the verdict. Hayes v. Railroad, 97 N. Y. 259; Mitchell v. Railroad, 51 Wis. 236; Holland v. Railroad, 155 Mass. 387; Stewart v. Railroad, 146 Mass. 605.

*A. R. Taylor* for respondent.

(1) There was ample evidence to justify the verdict. And as to whether this evidence was correct, or that for the defendant was correct, was a question for the jury, and the verdict is conclusive in this court. James v. Life Ass'n, 148 Mo. 15. A case will not be reversed unless there is no evidence tending to establish the fact found by the jury. So

that the facts testified by the plaintiff and the witness Lee are to be taken as true in this court, though contradicted by the evidence for the defendant. Moore v. Railroad, 73 Mo. 438; Bray v. Kemp, 113 Mo. 552; State v. Richardson, 117 Mo. 586; Eswin v. Railroad, 96 Mo. 290; Ettlinger v. Kahn, 134 Mo. 492; Vautrain v. Railroad, 78 Mo. 44. (2) According to the evidence of both plaintiff and part of defendant's witnesses, notably the gripman, the plaintiff's position on the running-board, after he gave the signal, was in plain view of both the conductor and the gripman—and the gripman testifies that he saw him on the running-board. If the plaintiff was on the running-board of the car, and was ready to step off as a passenger, and the car had slowed up for the purpose of discharging him as a passenger, the duty devolved upon defendant's servants in charge of its car to exercise a high degree of care such as would be exercised by careful and skillful railroad employees, to so manage and control the movement of the car as to prevent injury to him, while there in readiness to leave the car. The very fact of causing the car to go forward with a bulge and shock sufficient to throw the plaintiff off the car was negligence under the circumstances. As shown, the plaintiff's evidence and that of Lee, his witness, clearly showed that the car had slowed up almost to a stop, and plaintiff was waiting momentarily to step off, when the car should stop for him to do so, and, while in this situation, the gripman put the grip to the cable and the car started with a bulge which threw the plaintiff off. This evidence showed clear negligence upon the part of defendant's servants, and the verdict settled the issue of fact. Jackson v. Railroad, 118 Mo. 223; Cobb v. Railroad, 149 Mo. 145; Barth v. Railroad, 142 Mo. 552.

MARSHALL, J.—Damages for personal injuries.

On July 18, 1891, about 8:30 p. m., the plaintiff became a passenger on defendant's train of cable cars, composed of a gripcar and an open coach, at Franklin avenue and Broad-

way, according to his showing or at Biddle and Broadway, according to defendant's showing, whichever it was is immaterial in this case, paid his fare, and took a seat on the right side of the grip, two or three seats from the rear of the car, intending to go to Howard street and Broadway. The negligence charged in the petition is that when the car reached his destination it was slowed up, at his request, to allow him to alight, and "while plaintiff was in the act of alighting from said car, and before he had a reasonable time or opportunity to so alight, defendant's servants in charge of said cars negligently caused and permitted said car to be started forward with great force and with such a shock that plaintiff was thereby thrown from said car, on which he was such passenger, to the street, and the trailer ran upon and over the plaintiff's legs and body and thereby plaintiff's instep and leg was broken and the bones of his ankle and leg crushed and plaintiff was otherwise greatly bruised and injured upon his body."

The answer admits the character and business of the defendant, and that the plaintiff was a passenger, but denies the other allegations of the petition, and pleads contributory negligence.

The trial developed these facts: When the train neared Howard street, and was a hundred feet south of the south side thereof, according to plaintiff's testimony, or about two or three feet south of the south side thereof, according to plaintiff's witness Lee's testimony, the plaintiff raised his hand to the conductor, as he and Lee say, or nodded to the gripman, as the latter says, to signify his desire to get off at Howard street. The train was then concededly running too fast for a passenger to get off with safety. The plaintiff testified that he did not know whether the conductor saw his signal or not, or whether he rang the bell, nor did he notice the gripman do anything to stop or start the car. His witness, Lee, however, testified positively that the conductor rang the bell as a signal for the train to stop as the front of the gripcar

was crossing the south side of Howard street.   Both of them testify that the plaintiff arose from his seat when he signified his desire to get off, and stepped down on the running-board; that the train then slowed up, but not sufficiently to enable a person to safely get off and that "if it had stopped the least bit more he could have been able to step off," but that the train gave a jerk or bulge forward and the plaintiff was thrown off and run over by the front wheel of the trailer.   The plaintiff does not say what caused the train to jerk, but does say he did not see the gripman do anything to cause it.   His witness, Lee, however, testified positively: "Before the bulge of the car the gripman slacked up a little.   Before the car made the jerk he turned it on again," and further describing the result thereof said:   "There was a bill-dill like in the bulge, that is what threw him off before he made his step."   This witness speaking of himself said: "Besides being a teamster I am a minister of the gospel."   The evidence gives no definition of the meaning of a "bill-dill" nor are we sufficiently expert in the phraseology employed in street car operating to understand the term, but as it does not appear from the record that any explanation was asked by any one, it is fair to assume that the trial judge, the attorneys on both sides and the jurors understood the meaning of the term. There is a considerable conflict in the testimony as to how far the train was south of the south side of Howard street when the plaintiff signalled, and when he stepped down on the running-board, and as to whether the accident occurred south of, at or north of Howard street.   But all the witnesses testify that the train was running too fast for a person to attempt to leave it; and plaintiff and Lee say the signal was given to the conductor, while the gripman says it was given to him and he acknowledged it and intended observing it.   The plaintiff's testimony and that of his witness Lee shows that the car slowed up, and then gave a jerk or bulge forward, while the testimony of the witnesses for the defendant is that the

car did not slow up at all and gave no jerk until after the plaintiff was off the car, and that then it was stopped by the gripman within twenty-five feet. The testimony for the plaintiff is that he was thrown off the car by the jerk or bulge, while that for the defendant is that he stepped off of the car while it was running at the full speed of the rope and before it had commenced to slow up, and that he held on to the upright of the car after he stepped off and in consequence was thrown to the ground. The case was tried by the parties upon these two theories, and the court instructed the jury upon both theories. The jury returned a verdict for the plaintiff for thirty-five hundred dollars, and after proper steps the defendant appealed.

## I.

The first error assigned is the refusal of the trial court to sustain a demurrer to the evidence. In support of this contention the defendant relies on the case of Bartley v. Metropolitan Street Railway Co., 148 Mo. 124.

There is this difference between that case and this: In that case there was no evidence whatever that the jerk was caused by any act of the gripman, or that it was an unusual or extraordinary jerk, or that it was attributable to any defect in the track, any imperfection in the car or apparatus, any dangerous rate of speed or any unskillful handling of the car by the gripman, nor was there any claim that the plaintiff had signalled for the car to stop or that there was any desire or intention to stop it, while in this case it is admitted that the plaintiff had signified his desire to leave the train at Howard street and that the gripman, at least, had acknowledged the signal and intended stopping when the train reached the north side of that street, and the testimony of the plaintiff and Lee is that the train slowed up, but not sufficiently to justify a person attempting to get off and then gave a jerk or a bulge for-

ward and the plaintiff was thrown off, and Lee testified that this jerk arose from the fact that after the gripman slacked up a little and before the car made the jerk, "he turned it on again." No explanation was asked or given of the meaning of the expression, "he turned it on again," but all parties appeared to have been satisfied with the statement; and from the context it may fairly be inferred that it has reference to the slowing up, stopping and starting of a train of cable cars. So regarded, it was some substantial evidence to support the act of negligence charged in the petition. It is the only evidence in the case that tends to support the negligence charged. The great preponderance of the testimony is that the gripman did nothing, and that there was no such jerk or bulge before the plaintiff was off of the car. But it was a question of fact for the jury, and in cases at law, this court will not weigh conflicting testimony nor set aside a verdict where there is any substantial testimony to support it, however much we may disagree with the result reached by the jury. That is the especial duty and prerogative of the trial court. [James v. Ins. Co., 148 Mo. 15; Haven v. Railroad, 155 Mo. 216.]

This case is not one where a passenger attempts to leave a moving train without waiting for the train to stop, but is predicated upon the charge that the train was slowed up and before the plaintiff had a reasonable time to get off it was suddenly started. The difference in the duties and liabilities of the carrier and passenger under these two conditions are pointed out in Bertram v. Railroad, 154 Mo. 639. There was therefore no error in overruling the demurrer to the evidence.

## II

The next error assigned is that the court erred in giving plaintiff's instruction No. 1, which was as follows: "If the jury find from the evidence in this case that the plaintiff was a passenger upon defendant's car, and that upon approaching

Howard street, he signaled defendant's employee in charge of its car of his intention to leave said car at Howard street; and that said signal was understood by defendant's said servant; then it was the duty of defendant's servants in charge of its cars to have exercised a high degree of care—such as would have been exercised by practical and skilled railroad men under like circumstances,—to have so managed and controlled said cars as to have enabled the plaintiff to alight in safety from the car, on which he was a passenger, at his point of destination indicated by the plaintiff to defendant's said servants, provided the plaintiff exercised ordinary care to alight from said car," and in refusing defendant's instruction, explanatory thereof, which was as follows: "The court instructs the jury that by the first instruction read by the plaintiff's attorney to the jury, the court does not mean to instruct the jury that if plaintiff signaled defendant's employee, when approaching Howard street, of his intention to leave the car at Howard street, the gripman was obliged then to begin stopping the car, or if he had not slowed up before plaintiff got on the running-board, that the gripman was obliged to then begin slowing up as soon as he got on the running-board, or while thereon."

The first criticism of the plaintiff's instruction is that it does not conform to the negligence charged in the petition, in this, that the petition charges that the train had slowed up and while the plaintiff was in the act of alighting therefrom it was started with a jerk, and that the testimony shows that the train had not slowed up enough for the plaintiff to alight, and that he was not in the act of alighting. This particular objection was not interposed in the lower court, nor was any objection made to the testimony as for a variance. The modifying instruction asked and refused simply expressed the idea that it was not the duty of the operatives to begin to stop the train as soon as the plaintiff signified his desire to get off, nor to do so as soon as he got on the running-board. This instruc-

tion was properly refused, because, first, the plaintiff's instruction given, only declared it to be the duty of the defendant to so manage and control the cars "as to have enabled the plaintiff to alight in safety from the car on which he was a passenger, *at his point of destination* indicated by the plaintiff to defendant's said servants." The point of destination is conceded to be Howard street, and the accident occurred before it was reached. The plaintiff's instruction is faulty in being too indefinite and in not applying the law to the facts proved, but in this respect it was cured by the defendant's seventh instruction given, which is as follows:

"7. The court instructs the jury that if they believe from the evidence that the plaintiff signaled or indicated to the conductor or gripman, that he wished or intended to get off at Howard street, and that the usual place of stopping a train going north was at the north crossing of Howard street, then the gripman, exercising the high decree of care, required of him under the law, was not required to slow up or attempt to stop south of Howard street, or south of the north crossing, even if the plaintiff left his seat and got on the running-board south of Howard street, and the gripman saw him do so, if you believe from the evidence the gripman had not slowed up while the plaintiff was on the running-board."

·The objection that the instruction is erroneous because it does not conform to the negligence pleaded is overcome by the defendant's instructions one and two, which are as follows:

"1. The court instructs the jury that the only allegation of negligence made by the plaintiff in this petition, is that the car slowed up to allow him to alight from it, at his own request, and while he was in the act of alighting, the persons in charge of the cars negligently caused and permitted them to be started forward with great force and such a shock that he was thereby thrown from the car; and the court further instructs you that before the plaintiff can recover in this case he must have proved to your satisfaction by a preponderance,

that is the greater weight of evidence, the car had so slowed up and was so started forward with great force and a shock, and that thereby .he was thrown from the car, and if he has not done so, then your verdict must be for the defendant.

"2. The court instructs the jury that if they believe from the evidence that the plaintiff was not injured by reason of the car having slowed up for him to alight therefrom, and then while he was in the act of alighting it was started forward with great force and such a shock that thereby the plaintiff was thrown from the car but that he received his injuries from some other cause, and in some other way, it matters not how, then the jury will find their verdict for the defendant."

These instructions limit the right of the jury to find for the plaintiff to the finding that the plaintiff was in the act of alighting when the injury occurred. The plaintiff had done one act necessary to alight from the train, he had left his seat and stepped upon the running-board and the gripman testified that he knew it. If then the plaintiff's testimony and that of his witness Lee be true, and the jury believed it, that the train had slowed up so that it only required a little more slackening of the speed for the plaintiff to safely get off, and the gripman then put on the grip and the train jerked or bulged forward and threw the plaintiff off, there was undoubtedly substantial evidence to support the act of negligence charged, and the defendant must have so regarded it, else it would never have thought it necessary to ask the instructions above set out.

The instruction is further criticised because in its first part it only requires the jury to find that the plaintiff notified one of the employees operating the train, and in its last part it declares it to be the duty of both of the employees to use a high degree of care, notwithstanding the one not notified did not know that any care was necessary. It is true the instruction is faulty in using the singular number in the reference to the notice, and the plural number in reference to the duty, but the defendant's seventh instruction likewise only required the

jury to find that the plaintiff notified the "conductor or gripman" and then declares it the duty of the gripman to use a high degree of care. If the notice was to the conductor and the gripman knew nothing of it, then to require the gripman to use a high degree of care, when he was not informed that any particular degree of care was necessary is as great a solecism as is perpetrated by the plaintiff's instruction. But the case was tried by the plaintiff upon the theory that the train was slowed up and while he was standing on the running-board it was started with a jerk and he was thrown off, while it was tried by the defendant upon the theory that plaintiff had signalled to have the train stopped at Howard street and had left his seat and gotten on the running-board, all of which the gripman knew and saw, and that before the speed of the train was slacked or Howard street was reached, the plaintiff voluntarily stepped off the car and continued to hold on to the upright and was thus thrown to the ground and injured. The petition and answer proceed upon these lines respectively. The evidence of the respective parties was directed to the support of their respective contentions. The instructions, taken as a whole, covered both theories. It is inconceivable that the jury could have failed to understand the issues or were misled by the instructions. It was not contended below and it is not contended here that it was negligence for the plaintiff to leave his seat and stand upon the running-board after he had signified his desire to get off at Howard street and after the gripman had acknowledged the signal.

It is insisted, however, that the plaintiff's second instruction is wrong in requiring the defendant's servants to exercise a high degree of care, "such as practical and skillful railroad men would have exercised under similar circumstances," and especially so as there is no evidence in the case as to what care practical and skillful railroad men would have used.

The only difference between this instruction and the first instruction given for the plaintiff, and approved by this court, in Cobb v. Railroad, 149 Mo. l. c. 141, is that here the word "railroad" is employed in describing the practical and skillful men, and the word practical is used in place of "careful," whereas in that case it was "a very high degree of care, such as would have been used by careful and skillful men under like circumstances." But it was railroad men who were referred to in that case, not men who were careful and skillful in any other department of work or science, so the two instructions are to all intents and purposes alike. If the testimony for the plaintiff be true that the train after slowing up was started again with a sudden jerk or bulge, and threw the plaintiff off, it required no expert testimony to show what a practical or skillful railroad man would have done, for common sense and the instincts of humanity teach every man that no practical or skillful railroad man or any other kind of a man would have operated the train in that manner. This disposes of all the errors assigned in this court, and results in affirming the judgment of the circuit court. All concur.