EDNA LEE MONROE, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

St. Louis Court of Appeals. Argued and Submitted November 14, 1910. Opinion Filed December 30, 1910.

1. APPELLATE PRACTICE: Exceptions to Instructions: Necessity of Objections. Errors assigned to the giving of instructions will not be noticed on appeal, where objection to their being given was not made at the time they were asked, an exception after they were given, in the absence of such objection, not being sufficient.

2. ———: Rules of Trial Court: Assuming Objections Were Made and Exceptions Saved: Necessity of Incorporating Objections and Exceptions in Bill of Exceptions. While a trial court may adopt a rule whereby objections will be assumed to have been made and exceptions saved to the giving or refusal of instructions, under which such objections and exceptions may be incorporated in the bill of exceptions and considered on appeal, the appellate court will not assume, under such a rule, that objections were made or exceptions were saved, where they do not appear in the bill of exceptions.

3. INSTRUCTIONS: Acquiescence in Theory of Case. It is not to be understood that a defendant acquiesces in the theory of the case presented by plaintiff's instructions by asking countervailing instructions.

4. **CARRIERS OF PASSENGERS: Street Railways: Passenger Alighting: Duty of Carrier.** Notwithstanding that the usual stopping place of a street car may be on the far side of a street intersection, yet if it stops before crossing the street and a passenger is led to believe that it is stopped in obedience to her signal and to give her an opportunity to alight, it would be negligence for the carrier's servants in charge to allow the car to start while she is alighting.

5. ——: ——: ——: ——. Where the person in charge of a street car has actual knowledge of the fact that passengers are alighting, his duty to them is the same whether the stop is made at a regular stopping place or at some other place; and employees in charge of a street car stopping at a point near a street crossing where passengers customarily get off, though such point is not a regular stopping place, must exercise due care before again starting the car, when they know, or might know, that passengers are in the act of alighting.

6. ——: ——: ——: ——: **Ordinance Prescribing Stopping Place.** Where a north-bound street car stops on the south side of a street intersection, where passengers customarily alight from cars, but which is not a regular stopping place, the fact that a municipal ordinance provides that north-bound cars shall stop to discharge passengers on the north side of street intersections does not relieve those in charge of the car from exercising care to see that persons intending to get on or off will not be endangered by starting the car.

7. ——: ——: ——: ——: **Assumption of Passenger.** Where a street car stops at a point near a street crossing where passengers customarily get off, but which is not a regular stopping place, as if in obedience to a signal given by a passenger, such passenger may reasonably consider the act of stopping as an invitation to alight and may reasonably assume that the operatives of the car will conduct themselves accordingly.

8. ——: ——: ——: ——. The duty of a carrier safely to discharge a passenger embraces the duty to allow a reasonable time for the passenger to alight safely, and any movement of a street car, after stopping to discharge a passenger in obedience to signal, prior to the expiration of a reasonable time, is negligence, and in violation of the implied contract safely to carry and discharge him, imposed upon the carrier by law.

9. ——: ——: ——: **Negligence of Defendant: Question for Jury.** In an action by a street car passenger for injuries alleged to have been sustained by the premature starting of a street car which had stopped to permit her to alight and from which she was alighting, evidence *held* sufficient to warrant a verdict against defendant.

10. **APPELLATE PRACTICE: Conclusiveness of Verdict.** The jury are the sole judges of the evidence under the law and the sole arbiters when the evidence is conflicting.

11. **WITNESSES: Assembling Witnesses for Examination Before Trial.** Counsel who neglect to examine witnesses they purpose putting on the stand could hardly be said to faithfully discharge their duty to their client, and a claim agent has a right to assemble witnesses where they may be examined, either by himself or by counsel as to their testimony to be given in the case, and when such a claim agent testifies as a witness, cross-examination tending to establish that he had so assembled witnesses and examined them is improper.

12. **EVIDENCE: Opinion Evidence: Personal Injuries: Not Necessary to State Predicate of Opinion, When.** In an action for personal injuries, where a physician who had examined plaintiff testified to plaintiff's condition with sufficient particularity to enable the jury of non-experts to form their own conclusion, it was not error to admit the opinion of such physician as to the effect and probable consequences of the injuries, based upon the conditions he observed; and objections to questions calling for such an opinion on the ground that the symptoms or injuries should be detailed in the question as the basis of the answer were properly overruled.

13. **WITNESSES: Competency: Husband as Witness for Wife.** In a personal injury action by a wife, the testimony of her husband that she had sent him to a physician to procure medicine for her and to inform the physician of her condition, that he might prescribe for her, was admissible, it being within the exception contained in section 6359, Revised Statutes 1909.

Appeal from St. Louis Circuit Court.—*Hon. J. Hugo Grimm,* Judge.

AFFIRMED.

*Glendy B. Arnold* for appellant; *Boyle & Priest* of counsel.

(1) The court erred in permitting Dr. Whittley, over defendant's objection, to give his opinion that plaintiff was, at the time of the trial, suffering bodily pain, due to the injury, and that she would, in the future, be reasonably certain to suffer pain, without

requiring a statment of the evidence, either in the hypothetical question or by the doctor himself, upon which his opinion was based. Baehr v. Casualty Co., 133 Mo. App. 541; Reed v. Ins. Co., 58 Mo. 421; 2 Jones on Evidence, sec. 377. (2) The court erred in permitting Dr. Whittley, over objection, to state that in his opinion the present condition of plaintiff's womb would cause her nervous system and eyesight to be impaired. Glasgow v. Railroad, 191 Mo. 347; Baehr v. Casualty Co., 133 Mo. App. 542; Sutter v. Kansas City, 138 Mo. App. 105. (3) The court erred in permitting Dr. Whittley, over objection, to testify that in his opinion plaintiff would, in the future suffer pain because of the injury to her womb, in the absence of any allegation that she would in the future, suffer pain on account of the injuries to her womb. Brown v. Railroad, 99 Mo. 310; Moore v. Transit Co., 126 S. W. 1013. (4) The court erred in permitting plaintiff's husband to testify that plaintiff had sent him to Dr. Whittley for medicine and that he had gotten medicines from Dr. Whittley and on prescriptions which he gave plaintiff. Gardner v. Railroad, 124 Mo. App. 461. (5) The court erred in permitting Dr. Hays, over objection, to testify that in his opinion plaintiff will, in the future, suffer pain. Sutter v. Railroad, 138 Mo. 105; Baehr v. Casualty Co., 133 Mo. App. 531. (6) The court erred in refusing defendant's second, third, fourth and seventh instructions. Jackson v. Railroad, 118 Mo. 199; Murphy v. Railroad, 125 Mo. App. 269. (7) Plaintiff's fourth instruction erroneously authorizes an award of damages for future mental and physical pain, without evidence that plaintiff would suffer such damage. Slaughter v. Railroad, 116 Mo. 269.

*George Safford* for respondent.

(1) Any movement of a street car after a signal to stop has been given and prior to an expiration of a

reasonable time to the passenger in which to alight, is negligence. Millar v. Transit Co., 215 Mo. 619; West Chicago, etc., Co. v. Manning, 170 Ill. 417. (2) The fact that a city ordinance provides that street cars stopping at street intersections shall stop at the further cross-walk, does not relieve those in charge of a car stopping at the nearer cross-walk from using reasonable care to see that persons attempting to get on or off will not be endangered by starting the car. West Chicago, etc., Co. v. Manning, 170 Ill. 417. (3) The court did not err in refusing defendant's second instruction because: (a) The petition alleges: "That when the conductor knew or by the exercise of ordinary care might have known that plaintiff was then and there in the act of alighting from said car and had not fully alighted therefrom the said defendant negligently . . . caused said car to start forward with a sudden and unusual jerk and thereby negligently caused," etc. (b) The evidence showed the conductor "knew," etc., therefore the defendant was liable no matter where the injury occurred. (c) The petition alleged and the evidence showed the conductor stopped at a place "at that time recognized and habitually used by the defendant for discharging passengers from its northbound Jefferson Avenue Cars," therefore the conductor might by the exercise of ordinary care have known, etc., therefore defendant is liable no matter where the injury occurred. (d) The petition alleged and the evidence showed that the car stopped just after plaintiff's signal, etc., therefore defendant was liable. Millar v. Transit Co., 215 Mo. 619. (4) Physical pain and mental anguish usually, and to some extent, necessarily flow from, or attend, bodily injuries. It is not necessary to make specific proof of pain and mental anguish. These elements of damage are sufficiently shown by the evidence which discloses the nature, character and extent of the injuries. From

such evidence, the jury may infer pain and mental anguish. Railroad v. Warner, 108 Ill. 538; 18 Am. and Eng. Railroad Cases, 100; Railroad v. Curry, 64 Tex. 85; Brown v. Railroad, 99 Mo. 318. (5) Dr. Hayes and Dr. Whittley did not testify to any conclusion, but to their opinions, based upon the objective symptoms they discovered when they examined plaintiff. All questions asked plaintiff's expert witnesses with reference to present and future pain were based on the opinion of the Supreme Court in McCaffery v. Railroad, 192 Mo. 160. (6) The giving of erroneous instructions is not reversible error unless the defendant objected and saved its exceptions to the giving of such instructions at the time. Barnes v. Lead Co., 107 Mo. App. 613; State v. Reed, 89 Mo. 171; Randolph v. Alsay, 8 Mo. 657; Ritzenger v. Hart, 43 Mo. App. 185; State v. Rambo, 95 Mo. 466; Harrison v. Bartlett, 51 Mo. 170; Griffith v. Hanks, 91 Mo. 116.

STATEMENT.—This is an action to recover damages for personal injuries alleged to have been sustained by plaintiff while attempting to alight from one of defendant's cars upon which she was a passenger. After formal averments and matters of inducement, plaintiff charges in her amended petition, upon which the case was tried, that on the day named she boarded a northbound Jefferson avenue car of the defendant, for the purpose of being transported as a passenger, paying her fare, and while being transported as a passenger northwardly, along and over Jefferson avenue in the city of St. Louis, and when the car was at or near the intersection of Olive street and Jefferson avenue, the conductor in charge of the car notified plaintiff that the car was then about to stop at the intersection of those streets for passengers to alight therefrom; that thereupon defendant stopped the car for the purpose of allowing passengers to alight therefrom and

plaintiff proceeded to alight as quickly as she reasonably could, but when the defendant, by its conductor, knew or by the exercise of ordinary care might have known that plaintiff was then and there in the act of alighting from the car and had not fully alighted therefrom, defendant negligently and carelessly caused the car to move forward with a sudden and unusual jerk and thereby negligently caused plaintiff to be precipitated from the rear step of the car upon the ground or pavement and to be injured, describing the injuries as injuries to the bones, muscles, tendons, nerves, membranes and skin in and about the hip joint and thigh, the left arm cut, etc., plaintiff's nervous system greatly and permanently shocked and debilitated and plaintiff so badly injured by the shock to her nervous system and injured in and about her womb that by reason thereof, being then pregnant, she was caused to suffer a miscarriage. Plaintiff further charges that by reason of the injures she has suffered, is still suffering and will continue to suffer during the rest of her life, great bodily pain and mental anguish, great pain and numbness of her left hip and thigh, from an impairment of the sense of sight, from a partial loss of the sense of touch, from vertigo and dizziness, from melancholia, from an impairment of the sense of hearing and from traumatic neurasthenia. Damages in the sum of five thousand dollars, with costs of the action, were prayed.

The answer admits the ownership and operation of the car by defendant, upon which, it is alleged in this petition, that plaintiff was a passenger, and denies each and every other allegation in the petition.

At the trial before the court and jury, plaintiff, a young married woman, twenty-three years of age, testified substantially, that on the day named she boarded a north-bound Jefferson avenue car at Park avenue, in the city of St. Louis, intending to transfer

to an east-bound Olive street car at Jefferson avenue and Olive street, her destination being Ninth and Olive streets. She took her seat about the center of the car, paid her fare and obtained a transfer check for a passage on the Olive street line. When the car was somewhere in the block between Pine and Olive streets, the conductor announced Olive street as the next stop. Immediately upon this announcement, she rang the signal bell to advise the conductor of her desire to alight at Olive street. A few minutes after she rang the bell, the car was stopped, after which she arose from her seat and proceeded with reasonable haste to the rear platform to alight. As she passed out of the rear door onto the platform, she saw the conductor standing on the platform, facing her, but doing nothing. She stepped down onto the step of the platform to alight and while standing with one foot on the step and the other ready to step on to the pavement, the car was started forward with a jerk, throwing her to the pavement and injuring her in her left side, hip, shoulder and arm. When she got up, her hip was hurting her, her arm was bruised and her finger bleeding. Her hip has continued to pain her since the injury. She suffered an injury to the womb and on the following Monday she suffered a miscarriage. After she got up from her fall, she went into the office of a physician at the corner of the streets named, cleaned the dirt from her clothes and washed the blood from her hand; stayed in the doctor's office a short time, then went to meet her aunt, according to appointment and together they went to a matinee at a theater near Ninth and Olive streets. After the matinee was over she returned to her home and went to bed. That night she suffered pains in her hip, back and stomach; stayed in bed the two following days, and on Sunday morning, the third day, being afflicted with an internal discharge, she sent for the physician who had first attended her. He made an examination

and returned Monday with another physician and per-
formed an abortion upon her in order to relieve her.
Neither this physician nor his associate ever returned
to examine her or treat her after performing this op-
peration, nor did any other physician attend her while
she was confined at this time.    She took medicine
brought to her by her husband from the physician dur-
ing the remainder of the time she and her husband con-
tinued to live in Madison, Illinois, where they resided
at the time of her trip to St. Louis.    She remained
in bed about ten days after the surgical operation and
was then able to get up and around.    In about three
weeks after the accident, she and her husband moved
over to the Missouri side of the river to live and since
then she has had the same physician who first attended
her, as her regular physician.    As a result of the injury
her sight was affected so that she had to use glasses
again.    Prior to her injury she had suffered from weak
eyes and nearsightedness but had not used glasses for
some time; is now more nervous than formerly; does
not sleep well; has headaches and suffers from dizzi-
ness at times.    Prior to her injury she had good
health; since than she has recovered much of her for-
mer strength but is not well.    As a result of her in-
jury she has suffered much mental pain.    Neither she
nor her husband had known the physician who first at-
tended her prior to the accident.

We take the foregoing synopsis of plaintiff's tes-
timony from the statement submitted by counsel for
appellant, who add that plaintiff did not testify as to
where the car was stopped at Olive street, nor that the
place where the car was stopped was one where pas-
sengers were accustomed to alight, nor that the car was
started on the signal of the conductor, or by the motor-
man without a signal, or as to which side of the street
she was on when she fell, or where she lay after her
fall.

The physician referred to testified that his office had been at the northeast corner of Jefferson avenue and Olive street for two years prior to the date of the accident; saw plaintiff, who was a stranger to him at the time, fall from a north-bound Jefferson avenue car on to the street; at the time of the accident was returning to his office, which was upstairs in the building, when his attention was drawn to plaintiff by her falling from the steps of the rear platform of a moving north-bound Jefferson avenue car. She was partially on the steps when his attention was drawn to her, and fell straight out from the body of the car, landing "in a heap" on the street, about midway between the south rail of the east-bound track and the south curbstone of Olive street, and about eight or ten feet from the car, perhaps a little nearer the track than the curb, and about thirty feet from where he was standing. The place where she lay after the fall was indicated by the doctor by a crossmark on a photograph used by defendant at the trial and reproduced in the abstract. The physician testified that he knew nothing about the motion of the car before his attention was attracted by plaintiff falling from the step. He testified that passengers frequently got off of north-bound Jefferson avenue cars when they would stop south of Olive street because of obstructions in Olive street but that the regular place for the discharge of passengers was on the north side of Olive street. Plaintiff was picked up by some men and taken on to the sidewalk at the southeast corner of the street. The doctor went over to ascertain if she was hurt and to render any assistance she might need that he could give. At his request they went into his office where he dressed her arm and finger, which were bleeding; made no further examination of her injuries then. She stayed in his office thirty or forty minutes and went away. This accident happened on Friday. The following Sunday the doctor

was called and went over to Illinois to see the plaintiff. He examined her and found her suffering; described her injuries and condition. Prescribed for her and on Monday following went back to see her and with the assistance of another physician operated on her, removing the fetus, which proved to be dead. Described her condition and symptoms that rendered the operation necessary. Left instructions that her husband was to report her condition to him every day but did not go back to see how plaintiff progressed, after the operation, while she lived in Illinois. Next saw plaintiff when she removed to St. Louis. Prescribed for her and examined her from time to time to ascertain her condition. Found a hypertrophied, enlarged uterus and also falling of the womb. That is her present condition.

This physician having testified substantially as above, he was asked to state, whether or not in his judgment, basing his opinion upon the objective symptoms that he discovered at the various times that he examined Mrs. Monroe, "she is now suffering any bodily pain due to the injury that you saw when you first examined her." This was objected to by counsel for defendant, "because we do not know what evidences of injury, or symptoms he may have seen there at all. We only know what he has said. I do not think the doctor can base an opinion upon things that the jury do not know. He may have seen things there that the jury don't know anything about, and therefore his opinion is based upon matters which are not in evidence. I think the symptoms, or the injuries should be detailed in the question as the basis of the answer." The objection was overruled and defendant excepted. Witness answered that plaintiff "seems to be suffering. She is suffering more at this time than she was when I first examined her, and it seems that that condition, as far as her nervous condition, as the trau-

matic neurasthenia, it is worse. She is very nervous."
Counsel for defendant moved to strike out the answer,
on the ground that the opinion and the answer are
based upon matters and things which are not in evi-
dence. The motion was overruled, defendant except-
ing. The witness further testified that he had examined
the plaintiff about eight or ten days before the trial;
that she certainly was then suffering pain. This witness
was further asked, after he had testified that he had
been officing in the neighborhood for about two years,
to state what the custom was with reference to cars
pulling up at that crossing; if he knew, to state what
he saw them do. On this being objected to, the court
held that plaintiff might show, if she could, not only
what was the customary and ordinary place for dis-
charging north-bound passengers on Olive street, but
whether also as a matter of fact it was customary to
discharge them on the south side of the street. This
was objected and excepted to by defendant and the
question being repeated as to what witness saw the
cars do on the south side of the street from time to
time during the two years, he answered that, "Lots
of times they wouldn't stop at all. They would go
right through and stop on the opposite side. And some-
times if there was a car passing they would stop un-
til the car got by;" when a car stopped on the south
side of the street, he had seen some passengers get
off and some of them would stay there until they got
across the street and then get off; had seen passengers
let off from the north-bound Jefferson cars on the
south side of Olive street a number of times, frequently,
prior to October 9, 1907, and since that time; by fre-
quently, he stated, that he meant, "sometimes every
day" if he happened to look but could not say ex-
actly; passengers would get off at either end of the car.

On redirect examination this physician was asked
to state, basing his opinion upon the symptoms that he

saw and upon the conditions that he saw of Mrs. Monroe's womb, when he examined her, whether in his opinion and judgment she was reasonably certain to suffer pain in the future. This was objected to, objection overruled, defendant excepting, and the witness answered that the condition she is in, in his opinion, will remain as long as she lives unless she is operated on and unless the ligaments that are supporting the uterus are taken up and shortened; that pain will continue, in his judgment, until that operation is performed; would not state that the operation would relieve her entirely from pain but it would better conditions. He was then asked whether in his opinion plaintiff is reasonably certain to suffer some pain as long as she lives from that condition. There was no objection to this and he answered it in the affirmative.

The physician who accompanied the one above referred to when the operation was performed on the plaintiff, testified to that operation and its necessity and as to what he observed about the plaintiff, and, as shown in the additional abstract furnished by counsel for plaintiff, its correctness not contested, he was asked whether or not in his judgment, basing his opinion on the objective symptoms he saw when he examined her, she will in the future suffer from nervousness. This was objected to as invading the province of the jury, and the witness answered that in his opinion she would suffer in the future from nervous trouble. Without giving the testimony of this witness in detail, it is sufficient to say that he testified practically as had the other physician concerning plaintiff's condition.

The husband of plaintiff was asked whether his wife had sent him to the doctor when she was sick on the first occasion. This was objected to on the ground that witness was the husband of plaintiff. The court asked if counsel for plaintiff was not bringing the case

within the exception of the statute; that the purpose seemed to be to establish an agency, which would, of course, make it competent. The objection was overruled and exception saved and the witness testified that his wife had sent him to the physician at various times to procure medicine for her and to inform the doctor of her condition that he might prescribe for her.

A witness on behalf of plaintiff testified to the effect that at the time of the accident he was doorman for a dental parlor at the southeast corner of Jefferson avenue and Olive street; that the duties of his calling required him to stand on the street at the entrance of the dental office and hand out cards to passers-by, advertising the business of his employer. At the time the car on which plaintiff was a passenger came up to Olive street, the witness testified, he was standing with his back against a large telephone pole on the southeast corner of the street; that he saw the car come to a stop with plaintiff on the step of the rear platform; that while she was in this position, the conductor standing on the rear platform gave the signal for the car to start. The car was started off with a jerk, at a speed of eighteen miles per hour, throwing plaintiff to the street. After her fall plaintiff lay in the street about midway between the south curb of Olive street and the south rail of the east-bound track of the Olive street line, that is to say, the south rail of the south track.

A lady, testifying as a witness for plaintiff, said she was on the car with plaintiff but not acquainted with her; sat two or three seats behind plaintiff; when the car was about at Olive street and while it was in motion, plaintiff passed down the aisle by her and on to the rear platform, she following close behind her. Plaintiff got down on the step after the car had stopped, to alight and the witness was right behind her

also waiting an opportunity to step off on the south side of Olive street. While they were in this position the car was started with a jerk, on a signal by the conductor, throwing plaintiff into the street. The conductor was standing on the rear platform as she and plaintiff came out to get off. Plaintiff fell between the south curb and the south rail of the east-bound track. Witness stayed on the car until it reached the north side of Olive street when she alighted and took a west-bound Olive car to her destination.

Another lady, the aunt of plaintiff, met plaintiff at Ninth and Olive streets on the day of the accident and accompanied her to the theater; did not see the accident; noticed that plaintiff was excited and nervous. They returned home after the matinee and plaintiff went to bed; saw the doctor who came to visit plaintiff on the following Monday. Before the accident plaintiff was as well as any one; since then she has not seemed as strong as before.

This is substantially the testimony for the plaintiff in chief, practically, except as above noted, as set out by the counsel for the defendant in their statement of the facts.

It appears that during the examination of one of the witnesses and after counsel for defendant had made an objection which the court overruled and to which action counsel for defendant excepted, that that counsel asked the court if exceptions are saved as a matter of course, to which the court answered, "Yes." Whereupon this occurred:

"Mr. Safford: I do not like to suggest to the court, but I would like to know when exceptions are saved.

The Court: The court will adopt its own rules.

Mr. Safford: I except to that ruling of the court.

The Court: Of course that will not prevent you saving an exception every time there is an adverse

ruling, if you desire, but it will save the other side the necessity of formally saving exceptions.

Mr. Safford: Under the ruling of the Supreme Court I want to save my record.

The Court: It has been a rule of this court since I have been on the bench—I don't know how it was with my predecessor—that when an objection is made and passed on that the person who is adversely affected thereby need not get up and save an exception; it will be understood that he excepts and he may so state in his bill of exceptions.

Mr. Safford: I have had objections made to the fact that I did not save them when that rule was in effect, and advantage taken of it by other counsel, and for that reason I want to make my objections, and save my exceptions, but for no other reason. I do not want this court to think that I want to interfere with its ruling."

The defendant thereupon introduced evidence of the motorman, conductor and passengers on the car, and bystanders, tending to put an entirely different light on the occurrence. We will not set it out but assume that it contradicts all that offered in behalf of plaintiff as to the facts connected with the happening of the accident, not however going into the matter covered by the two physicians as to plaintiff's condition and the treatment she underwent by them or as to the character or extent and effect of her injuries; as to this there was no countervailing testimony.

As our attention is especially called to the testimony of a witness for defendant, who was one of its employees, we summarize it. He testified to the measurements of the street and the car tracks and the distance between the car tracks and between the curb and the car tracks. After testifying to these facts, plaintiff, on cross-examination, brought out the fact that the business this witness was engaged in for de

fendant was assembling the witnesses for defendant in suits which might then be pending against defendant, in a room in a building across the street from the court house; that he kept them there in readiness to send them into the several court rooms when the cases in which they were witnesses were to be tried, or, if the case did not come to trial, to excuse them. After counsel for plaintiff had spent quite a while in bringing out these facts, on cross-examination, counsel for defendant objected to the line of examination, saying that he could not see what purpose counsel for plaintiff had. The court remarked that it did not see what light counsel for plaintiff was throwing on this case, whereupon counsel for plaintiff stated that he was coming around to some matters, whereupon the court suggested that instead of coming around to it he "get at it." Counsel for plaintiff then continued his line of examination of the witness as before, bringing out testimony to the effect that when he received subpoenaes for witnesses, he inclosed with the subpoenaes a card, requesting the persons to whom they were given to kindly call at the office of the United Railways Company of St. Louis, designating the room referred to; that in the cases on trial, the court subpoenas were wrapped up with a card to the above effect. This line of cross-examination was followed at great length, tending to show the manner in which this witness assembled the witnesses for the defense in the several cases to which it was a party; that this agent in many instances went over the testimony with the witnesses and if they had testified before, reading that to them; if they had made statements, reading those statements to them; that often the attorneys of the defendant came to this room where the witnesses were assembled to talk over the cases with the witnesses. Nothing else was brought out on cross-examination of this witness.

At the conclusion of all the testimony, defendant again interposed a demurrer, which was overruled, and asked a peremptory instruction for a verdict in its favor which was refused, defendant duly saving exceptions. Defendant then asked four instructions, which the court refused to give and to which refusal defendant duly excepted. These instructions are numbered, respectively, 2, 3, 4, and 7 and marked as defendant's refused instructions.

Instruction No. 2 told the jury that if they believed from the evidence that the usual and customary place for passengers to alight from, and get on, a north-bound Jefferson avenue car at Olive and Jefferson, was the northeast corner of Olive and Jefferson, and that the plaintiff attempted to get off the car before it had reached that point and before it had stopped at said point for passengers to leave or to enter, then she is not entitled to recover and your verdict should be for the defendant.

Instruction No. 3 told the jury that if they found and believed from the evidence that when plaintiff fell or was thrown to the ground she lay at some point south of the usual stopping place of the north-bound car, as defined in another instruction, and at a point south of the point at which the car stopped for passengers to alight, then she is not entitled to recover.

The fourth instruction told the jury that the defendant is not required to look for passengers getting off of its cars, except at places fixed by the rules of the company and the ordinances of the city and other places where passengers are in the habit of getting off of cars while they are stopped, and unless the jury believed from the evidence in the case that defendant's car was stopped at the time plaintiff alighted therefrom, and that passengers were in the habit of getting off of the car while it was so stopped at said place, then plaintiff is not entitled to recover.

Instruction No. 7 told the jury that the plaintiff charges in her petition that the defendant stopped its car while she was a passenger thereon, for the purpose of allowing its passengers to alight therefrom, and unless you believe and find from the evidence in this case that the alleged stop of the car mentioned in the evidence was made for the purpose of allowing passengers to alight therefrom, then the plaintiff is not entitled to recover in this case.

At the instance of the plaintiff, the court gave four instructions.

No objection appears by the abstract to have been made by the defendant to the instructions prior to their being given, so that for reasons hereinafter stated we do not consider it necessary to set them out. After they were given the abstract shows that the defendant then and there excepted to the action and ruling of the court in giving said instructions and each of them.

At the instance of the defendant the court gave the jury instructions Nos. 5, 6, 7, 8 and 9, and of its own motion instruction No. 10, the last being as to the number of jurors necessary to concur in a verdict. The defendant's instruction No. 5 told the jury that if they believed from the evidence that the car was in motion at the time plaintiff attempted to alight therefrom, then she is not entitled to recover in the case.

The sixth instruction told the jury that although they might believe from the evidence that defendant's car was stopped while plaintiff was attempting to alight therefrom and that it was set in motion while she was in the act of alighting, if they further believe that such stop of the car was not made for the purpose of permitting the passengers to alight or that the stop was not made where the defendant was in the habit of stopping its cars, or that passengers were not in the habit of getting off the car while it was stopped at that place, she is not entitled to recover.

The seventh instruction told the jury that the mere fact that the defendant's car was stopped after plaintiff had signaled to the conductor her desire to alight at Olive street, was not an invitation by defendant for her to alight, unless the place at which the stop of the car was made was a place where passengers were in the habit of alighting from north-bound cars, and if the jury believe from the evidence that the car stopped at Olive street and at any other place than the north side thereof, then plaintiff is not entitled to recover in this case unless the jury further find from the evidence that the place where the stop was made was a place where passengers were in the habit of alighting from defendant's cars unless the defendant's conductor saw plaintiff's attempt to alight from the car while it was so stopped at such place.

The eighth instruction told the jury that the plaintiff in the case must be found to have had knowledge of the ordinance read in evidence (referring to sections of the city ordinance which had been read in evidence by plaintiff's counsel) which required defendant to bring its north-bound cars to a stop before crossing Olive street, for the purpose of avoiding or preventing collisions with other cars of the defendant running east and west on Olive street, and if the jury believe from the evidence that the car on which plaintiff was a passenger was brought to a stop on the south side of Olive street for the purpose of permitting a car to pass east or west on Olive, the law charges plaintiff with knowledge that the car was stopped in compliance with the ordinance and not for the purpose of allowing passengers to alight therefrom; and while plaintiff had the right to leave the car while it was stopped on the south side of Olive street for the aforesaid purpose, if the jury believe that she was injured as a direct result of her attempt to leave the car while it was so stopped, then she is not entitled to recover

Monroe v. United Railways Co.

in the case, unless the jury believed and found from the evidence that the conductor caused the car to be set in motion while he saw plaintiff was in the act of alighting therefrom.

The ninth instruction was as to the credibility of witnesses and is in the usual and proper form.

The jury returned a verdict for plaintiff in the sum of two thousand dollars. Defendant afterwards and in due time filed its motion for new trial as well as a motion in arrest, both of which were overruled, defendant duly excepting and perfecting an appeal to this court, having in due time filed its bill of exceptions.

It appears in the bill of exceptions, as abstracted, that when the bill of exceptions was prepared certain exceptions noted in that bill were marked with an x by counsel for plaintiff and specified by him as not saved by formal statement of exception of the defendant or its counsel done at the time, "but," proceeds the bill of exceptions, "the bill is made to show these exceptions were saved, because of a rule of court well known to members of the bar, and announced in this cause, that where a ruling was made by the court, the party against whom it was made need not make formal announcement of his exception upon such ruling, but that the court would understand that each ruling was excepted to and that the exception might be stated in the bill of exceptions as having been made. Under this rule defendant has been permitted to insert in the bill the statement, after such adverse ruling, that it saved an exception thereto at the time, a statement which is true, as the court and counsel understood at the time each ruling was made that it was excepted to and the bill of exceptions would so state." The bill of exceptions which was filed containing the above quoted matter, was signed both by the judge who tried the cause and by his successor in the court room in which the cause was tried.

REYNOLDS, P. J. (after stating the facts).-- Counsel for appellant assign eleven errors. The first, second, third, fourth and eleventh are to alleged errors in the several instructions given at the instance of plaintiff. The fifth, sixth, seventh and ninth errors are assigned to the admission of the testimony of the two physicians. The eighth is in permitting plaintiff's husband to testify that plaintiff had sent him to the physician for medicine and that he had procured medicine from the physician on prescriptions which he gave plaintiff. The tenth assigned error is in refusing defendant's second, third, fourth and seventh instructions.

We are compelled to dispose of the errors assigned to the instructions given at the instance of the plaintiff on the authority of the decision of the Supreme Court of this state in the case of Sheets v. Insurance Co., 226 Mo. 613, 126 S. W. 413. We have, in a case passed on at this same term of court, that of Stevens v. Knights of the Modern Maccabees, had occasion to refer to this decision and to hold, on the authority of it, that instructions cannot be noticed when objection was not made at the time they were asked to their being given. We must adhere to that rule as announced and settled by our Supreme Court in the Sheets Case.

In the case of Union Loan, Storage & Mercantile Co. v. Farbstein, 148 Mo. App. 216, 127 S. W. 656, treating of the point arising over the bill of exceptions in that case, as to exceptions to instructions, we held that the matter of noting exceptions was primarily for the trial court, and that court having stated in the bill of exceptions itself that he had, following the rule of his court, allowed exceptions to be noted as having been made to the giving and refusing of instructions, his action was conclusive on us. But this does not reach the case at bar. In that case the rule of court invoked applied to exceptions both to the giv-

ing and refusing of instructions after they had been given, as well as to exceptions to the action of the court in passing on objections. The rule covering these was distinctly found, and acting on it, the trial court allowed exceptions to be incorporated in the bill of exceptions which he signed. In the case at bar there is no suggestion whatever found in the bill of exceptions before us, as abstracted, and under a like rule of the circuit court of the city of St. Louis in force as to objections to instructions, objections had been made. Although we held in the Farbstein Case, supra, that where there is a rule of that court whereby objections and exceptions are assumed to have been saved to the giving or refusal of instructions, and that acting on it, the trial court allowed exceptions to be noted, we are not holding that when objections or exceptions are not in the bill of exceptions, we will assume that there was either because of the rule. The rule justifies the trial judge in allowing objections or exceptions to be noted in the bill. When they appear in the bill before us, we notice them, not because of the rule but because the trial court had allowed them to appear in this bill. Our Supreme Court has expressly denied the power of a court, by rule or practice, to dispense with the necessity of objections to instructions or to evidence, and held that any such rule would not be recognized by an appellate court. [Green v. Terminal R. R. Assn., 211 Mo. 16, l. c. 34, 109 S. W. 716.] In that case no exception appeared in the bill, but counsel invoked the rule of the trial court. The Supreme Court refused to recognize it. In the case at bar it is nowhere recited in the abstract of the bill of exceptions, that any objections were made, or understood to have been made to the instructions, prior to their being given. Hence the ruling in the Farbstein case is not applicable to the facts in the case at bar.

That ruling is however applicable to another phase of this case as will be hereafter noted.

Touching the instructions given at the instance of the defendant, we agree with counsel that it is not to be understood that a defendant acquiesces in the theory of the case presented by plaintiff's instruction by asking countervailing instructions. [Clancy v. St. Louis Transit Co., 192 Mo. 615, 91 S. W. ·509.] But even without any consideration of the instructions given at the instance of plaintiff, and without holding that defendant is precluded by its own instructions, from attacking the instructions given at the instance of plaintiff, and accepting defendant's instructions, as it urges us, merely as countervailing the instructions of plaintiff, we hold that the instructions given at the instance of defendant presented the defense to the jury in the most favorable and forceful manner possible, short of a direction for a verdict for defendant. We are not to be considered as approving the instructions given for plaintiff—we merely treat them as given without objection, and hence not open to attack here. In point of fact we think the instructions given for and at the instance of defendant, entirely too favorable to defendant and as not in line with authority, as we shall notice later when passing on the refused instructions.

Proper exception has been saved to the refusal of the four instructions asked by the defendant. We have set them out and are unable to concur with counsel in their contention that it was error to refuse them. Nor do we think that the decisions cited by them, namely, Jackson v. Grand Avenue Ry. Co., 118 Mo. 199, 24 S. W. 192; Murphy v. Metropolitan St. R. Co., 125 Mo. App. 269, 102 S. W. 64, support the contention of defendant's counsel. The error of these refused instructions is that they leave out of view the proposition that notwithstanding the fact that the usual stopping place of this car may have been on the north side of

Olive street, yet if in point of fact it stopped south
of there and plaintiff was led to believe that it was
in obedience to her signal and to give her an oppor-
tunity to alight, it was negligence on the part of the
defendant to allow the car to start while she was in
the act of alighting, if that is a fact. In the case of
Jackson v. Railroad, supra, Judge GANTT who deliv-
ered the opinion, refers to and quotes the case of Rail-
road v. Mills, 105 Ill. 63, as holding that the car being
stopped from whatever cause, at a place where passen-
gers were in the habit of alighting, she had the un-
doubted right to alight without making any request,
and if the defendant's servants knew, or by the exer-
cise of due care, would have known of it, it was negli-
gence on their part to start the car before she had a
reasonable time in which to alight. Judge GANTT says
that with this rule our court fully agrees, but that in
the case before him the evidence shows no such habit
by the passengers as to put the servants in charge
of this car upon notice of their desire to get off at the
place plaintiff was hurt. In the case at bar there was
such evidence, given by several witnesses.

In Murphy v. Railroad, supra, the rule is stated
to be that where a person in charge of a car has actual
knowledge of the fact that passengers are alighting,
his duty to them is the same, whether the stop is made
at a regular stopping place, or at some other. In the
case at bar there is the evidence of several witnesses,
to the fact that the conductor in charge of this car
had actual knowledge of the intention of the plaintiff
to alight at the place where the car was stopped south
of the crossing.

We are referred by counsel for the plaintiff to
a later Illinois case than that cited and quoted with
approval by Judge GANTT, namely West Chicago
Street Railroad Co. v. Manning, 170 Ill. 417. It is
there said that the court inclines to the view that when-

ever a street car is stopped at or near the crossing
of streets, before the car is again put in motion,
the duty is cast upon those in charge of the car of ex-
ercising proper and reasonable care for the safety
of passengers; that it is within common knowledge
and observation that passengers enter and alight from
street cars at or near the crossings of streets and that
street cars stop at street intersections for the purpose
of receiving and discharging passengers. The court
holds that when a car is brought to a stop at or near
such crossing, it is not unreasonable to charge the
conductor or motorman in control of the car with no-
tice that passengers may avail themselves of the op-
portunity thus presented for leaving the car and also
with the duty of exercising a reasonable degree of care
before putting the car again in motion, to see that pas-
sengers seeking ingress into or egress from the car
are not in such position as to be endangered by putting
the car again in motion. Examining this Illinois case,
it appears that there was in force in the city of Chicago
very much such an ordinance as the ordinance in evi-
dence in this case. It was further held in the Illinois
case that under the ordinance, the plaintiff should
have remained in her seat until the car had crossed
the intersection of the streets and stopped at the fur-
ther walk, where it was required to stop by the pro-
visions of the ordinance requiring them to stop after
crossing the street. The court, however, held, constru-
ing this, that if a car approaching a street crossing
comes to a stop at the nearest walk, passengers who
have reached their destination may not unreasonably
regard it as an invitation to alight; that the persons
in charge of the car having brought it to a stop, cannot
be permitted, because of the ordinance, to ignore the
fact that passengers may be imperiled by putting the
car again in motion without notice or warning. Many
decisions of our Supreme and Appellate Courts are in

line with this ruling; among others see Millar v. St. Louis Transit Co., 215 Mo. 607, 114 S. W. 945; Murphy v. Railroad, supra, and Jones v. Traction Co., 137 Mo. App. 408, 118 S. W. 675. In the Millar case it is held that it is not only the duty of carriers of passengers, such as street cars, to carry the passengers safely but to give a reasonable time and opportunity to alight from the car. It is in evidence in the case at bar that "the signal to stop had been given, and any movement of the car thereafter, and prior to the expiration of a reasonable time in which to alight in safety, was negligence," says Judge Graves in the Millar case, adding that, "It was in violation of the implied contract to safely carry and discharge a passenger, which duty the law imposes upon a carrier. To safely discharge the passenger should be construed to mean a reasonable time and opportunity for the passenger to alight in safety." In the Murphy case it is said by the learned judge who delivered the opinion, speaking for the Kansas City Court of Appeals, "that where a car is momentarily stopped at a place not used as a regular station and for some purpose not connected with the action of passengers, no invitation to passengers to alight may be implied, and, if in such case, a passenger attempts to alight and is injured by the starting of the car, the carrier cannot be charged with negligence, unless the person in charge thereof knew that passengers intended to alight or had reason to suspect it." Jones v. Traction Co., supra, is to the same general import. In the case at bar there was evidence that the conductor knew or had reason to know that plaintiff intended to alight. This fact, a fact in evidence, although contradicted, brings this case under the exception, and under the rule that where a person in charge of a car has actual knowledge of the fact that passengers are alighting, his duty to them is the

154 App.—5

same whether the stop is made at a regular stopping place or at some other. Employees in charge of a car stopped at a point near a street crossing where passengers customarily get off, although that point is not a regular stopping place, must exercise due care before again starting the car, to see that passengers getting on or off will not be endangered by putting the car in motion. Having knowledge of the custom referred to, the operatives of the car must exercise care accordingly, when they knew, or might have known, that the passenger is in the act of alighting. Nor does the fact that the ordinance provides that street cars, stopping at street intersections, shall stop at the further cross-walk, relieve those in charge of the car which has been stopped at the nearer cross-walk, where, in accord with such custom, passengers are known to get off and on, from exercising care to see that persons intending to get on or off will not be endangered by starting the car. When the car stops at such a street crossing, as if in obedience to a signal, the passenger may reasonably consider the act of stopping as an invitation to alight and may reasonably assume that the operatives of the car will conduct themselves accordingly. The conductor of this car, in the case at bar, was standing on the rear platform at the very time plaintiff was there after the car stopped as if in response to her signal, and it was obvious to him that she intended to alight. It was his duty, under the circumstances, to have withheld any signal for the car to move forward until plaintiff was safe on the ground. The act of the conductor in failing to observe this duty, threw an element of liability upon this defendant. There was evidence in this case tending to show that the signal to stop had been given and, as held by the court in the Millar case, citing Grace v. St. Louis R. Co., 156 Mo. 295, l. c. 300, 56 S. W. 1121, any movement of the car thereafter and prior to the

expiration of a reasonable time in which to alight in safety was negligence, was in violation of the implied contract to safely carry and discharge a passenger, which duty the law imposes upon the carrier. "To safely discharge the passenger," says the court, "should be construed to mean a reasonable time and opportunity for the passenger to alight in safety." The facts in this case were disputed, but accepting the instructions given as correctly placing the law relative to those facts before the jury, as we must, there was ample testimony to warrant the jury, sole judges of the evidence under the law, and sole arbiters when the evidence is conflicting, as here, in arriving at the verdict reached by them in this case.

In the brief which he has submitted to us in this case, the learned counsel for the respondent requests us to read carefully the testimony of the agent of the defendant who was employed in assembling witnesses for it, as appears at designated pages of the abstract, and he asks us to draw therefrom such inferences as to us may seem reasonable and just, saying that "side lights sometimes show a picture to better advantage." According to this request, we have read all the testimony of this witness and have set his testimony out in substance. He was an agent in the employ of defendant and testified to the measurements of the street. The accuracy of these measurements, their absolute truthfulness is in no manner whatever controverted. That is all that this witness testified to on his direct examination. His cross-examination which covers some ten pages of printed matter, is entirely upon matters that are utterly irrelevant. We see nothing whatever either in the conduct of this witness or in the facts he testified to on cross-examination, to discredit his testimony in the slightest degree. As the agent of the defendant, he had a perfect right to assemble the witnesses where they could be examined

either by himself or by counsel as to their testimony to be given in any particular case. Counsel who neglect to do this of witnesses they propose to put on the stand, can hardly be said to faithfully discharge their duty to their client. We see nothing whatever to condemn in the testimony of this witness. There is nothing to show any improper "coaching" of witnesses. We cannot approve, even by silence, the style of cross-examination and the line of cross-examination indulged in of this witness by counsel for the plaintiff. In point of fact, none of the matter in cross-examination should have been admitted and when the learned trial court asked the purpose of counsel in introducing it, counsel for plaintiff announced that it would appear later. If it does appear later, either of this witness or of any other witness, it is not preserved in the abstract. Nor can we pass over in silence, our attention having been called to it by opposing counsel, the statements in the brief of the counsel for the appellant, reflecting on the prior occupation and concerning the testimony of a bystander, an employee of a dental concern. Counsel say in their printed brief as to the testimony of the bystander witness, that evidently the jury did not believe a word of it. If that is true, we are not able to understand how defendant was injuriously affected by it. Remarks derogatory to the two physicians, who testified for plaintiff, are found in the printed brief of counsel for defendant. We are bound to say, in justice to these gentlemen, witnesses under the protection of this court, no less than under that of the trial court, that the criticism, and remarks made concerning them by counsel for defendant in their statement and brief are entirely unwarranted by anything in the record in the case.

Covering the objection to the admission of the testimony of the physicians, we are unable to distin-

guish the point presented here from that urged and decided in McCaffery v. St. L. & M. R. Ry. Co., 192 Mo. 144, 90 S. W. 816. Comparison of the testimony in this case with that set out at pages 160 and 161 of the McCaffery case, shows the application of the law there announced to the facts in the case at bar. There, as here, the question asked related in part to traumatic neurosis, or neurasthenia. Without endeavoring to give the scientific definition of this disease, it is sufficient to say that it is within the petition, inasmuch as the petition charges injury to the nerves, and consequently the questions concerning it pertained to an injury stated in the petition. Practically the identical question that was asked of the physician in the McCaffery case was here asked of these physicians. That question was objected to unless based on the facts in evidence in the case and as incompetent and not predicated on any facts which the evidence tended to show and calling for a conclusion; the objection was overruled, defendant excepting. Our Supreme Court held the action of the lower court correct. These physicians were not testifying on a hypothetical case. They gave their opinion on conditions they observed. They had given those conditions in evidence to the jury with sufficient particularity to enable a jury of non-experts to form its own conclusion. On the authority of the McCaffery case, which we think covers the point here involved, we hold there was no error in admitting the testimony of these physicians, experts, on the effect and probable consequences of the injuries.

We think the testimony of plaintiff's husband was within the exception contained in section 6359, Revised Statutes 1909.

Counsel for respondent (plaintiff) objects to the entry in the bill of exceptions, of exceptions to various rulings of the court because exception, as he claims, was not made at the time. We have set out in our

statement the ruling of the court as to these exceptions, the practice in that court clearly appearing, and we have nothing to add to what we have said above on this subject, and what we said when treating of instructions in the case of Union Loan, Storage & Mercantile Co. v. Farbstein, supra.

On a review of the whole case, in so far as it is open to us for review, we find no error to the prejudice of the defendant in the case, and the judgment of the circuit court is affirmed. *Nortoni, J.,* and *Caulfield, J.,* concur.