OF THE

## STATE OF MISSOURI

AT THE

### OCTOBER TERM, 1907.

*(Continued from Volume 210)*

## CORA A. KING v. WABASH RAILROAD COMPANY, Appellant.

### Division One, April 1, 1908.

1. **NEGLIGENCE: Place of Safety.** If a pedestrian was in a place of safety by the side of a railroad track on which was a moving train, and suddenly placed himself, by inadvertence or otherwise, immediately in front of the moving train or tender, and was thereby injured, the defendant railroad company is not liable for his death. If the accident could not have been avoided, defendant is not liable, even though it failed to comply with the ordinance regulating the movement of trains.

2. ————: **Violation of Ordinance: Proximate Cause.** The violation of a city ordinance is negligence *per se*, and if no other facts occur in evidence to show that the injury to a pedestrian was occasioned otherwise than by such negligence, plaintiff will be entitled to recover. But where the evidence of the eye-witnesses tends to show that the violation of the ordinance was not the proximate cause of the accident, but that it was his sudden stepping on the track immediately in front of the moving train, then defendant is entitled to an instruction directing the jury to find for it, if they find such evidence to be true.

3.   ———: ———: ———: Unavoidable If Known. The viola-
tion of an ordinance by a railroad company does not authorize
a recovery in an action for negligence against it, where a person
was injured by acts of his own, which, if known, could not have
, been prevented by the company had it complied with the ordi-
nance.

4.   ———: Place of Safety: Warning. The servants of a railroad
company are not required to give warning to a pedestrian in a
place of safety until he puts himself in a place of danger. And
even then there is no negligence unless there is time and op-
portunity to make the warning of some avail, even though the
servants are not in the place required by ordinance.

5.   ———: Contributory: Humanitarian Doctrine. The humani-
tarian doctrine contemplates that contributory negligence is no
bar to an action for personal injuries where the person injured
is seen to be in a place of danger, or by the exercise of ordinary
care could have been seen to be in a place of danger, in time
to have prevented the injury by the use of ordinary care. But
where the facts of a case do not bring it within that rule, the
doctrine of contributory negligence applies.

Appeal from Daviess Circuit Court.—*Hon. J. W. Alexander*, Judge.

REVERSED AND REMANDED.

*J. L. Minnis* and *Frank P. Sebree* for appellant.

(1)   The court committed error in refusing to give the demurrer to the evidence and defendant's instruction in the nature of a demurrer to the evidence. (a)   It was the act of the deceased in leaving a place of safety and getting against the tender or against the drive wheel of the engine that was the proximate cause of the accident.   Green v. Railroad, 192 Mo. 131; Koegel v. Railroad, 181 Mo. 379; Schmidt v. Railroad, 191 Mo. 215; Mockowik v. Railroad, 196 Mo. 550; Carrier v. Railroad, 175 Mo. 470; Holwerson v. Railroad, 157 Mo. 243.   (b)   There was no evidence of any negligence on the part of the defendant that caused the accident.   The deceased saw the engine back down by the switch, saw the brakeman turn the

switch for the north side track, heard the brakeman warn him to look out for the engine, and knew that the engine would back on the north side track.   Under such circumstances the failure to comply with the ordinance, if there was such failure, was immaterial.   Porter v. Railroad, 199 Mo. 82; Kreis v. Railroad, 148 Mo. 321; Hutchinson v. Railroad, 195 Mo. 546; Hayden v. Railroad, 124 Mo. 566; Koegel v. Railroad, 181 Mo. 379; Mockowik v. Railroad, 196 Mo. 550.  (c) The deceased was not in peril until he moved toward the railroad track and either stepped, stumbled or fell from a place of safety against the tender, or against the drive wheel of the engine, after the tender had passed him.   In either case it was too late for the men in charge of the engine to have saved him, even if they had seen him after he was in danger.   Van Bach v. Railroad, 171 Mo. 338; Tanner v. Railroad, 161 Mo. 497; Evans v. Railroad, 178 Mo. 508; Koegel v. Railroad, 181 Mo. 379; Moore v. Railroad, 176 Mo. 528; Kreis v. Railroad, 148 Mo. 321; Lennon v. Railroad, 198 Mo. 525; Hyde v. Railroad, 110 Mo. 278; Boyd v. Railroad, 105 Mo. 380.   (d) Under the statute the deceased was, for the purposes of this case, a trespasser in the defendant's railroad yards and the defendant was not bound to look out for him.   R. S. 1899, sec. 1105; Ryan v. Railroad, 88 Mo. 392; Barker v. Railroad, 98 Mo. 50; Hyde v. Railroad, 110 Mo. 272; Sullivan on Stat. Construction, secs. 253, 289; Beach on Contributory Negligence (3 Ed.), sec. 203; 3 Elliott on Railroads (1 Ed.), secs. 1253, 1254; 2 Thompson on Negligence, secs. 1706 and 1711; O'Donnell v. Railroad, 197 Mo. 113; Carr v. Railroad, 195 Mo. 297; Chaney v. Railroad, 176 Mo. 598; Wenker v. Railroad, 169 Mo. 592; Feeback v. Railroad, 167 Mo. 206; Berry v. Railroad, 124 Mo. 223; Frye v. Railroad, 200 Mo. 377.   (2)  The court committed error in refusing instruction 3 requested by defendant.   This instruction

declared that if the deceased was north of the track and after the tender had passed by him, he moved up close to the engine and was struck by the engine and killed, then he was guilty of negligence and plaintiff could not recover. Koegel v. Railroad, 181 Mo. 379; Lennon v. Railroad, 198 Mo. 514; Kreis v. Railroad, 148 Mo. 321; Evans v. Railroad, 178 Mo. 508; Van Bach v. Railroad, 171 Mo. 338. (3) The court committed error in refusing instruction 4 requested by the defendant. It declared that if the deceased was walking north of the track and when the tender approached near him he stepped toward the track, and was immediately struck by the tender and killed, then his death was due to his own negligence, and the verdict must be for the defendant.

*Henry L. Eads, E. M. Harber* and *A. G. Knight* for respondent.

(1) Contributory negligence does not bar a recovery where the employees in charge of an engine might reasonably expect the presence of persons on the track and either saw such person, or by the exercise of ordinary care might have seen him and averted the injury. Riska v. Railroad, 180 Mo. 168; Fearons v. Railroad, 180 Mo. 208; Scullin v. Railroad, 184 Mo. 695; Eppstein v. Railroad, 197 Mo. 720. The facts and circumstances induced the deceased to believe that the engine would proceed down the main track, which he left as dangerous and got over on to the side track, believing it a place of safety, and while walking down this track the employees of defendant in charge of the engine, in grossest violation of law, ran the engine over on to the side track, and at an unlawful rate of speed, and without any warning ran the tender against the deceased, knocked him down and cut him in two. And under the authorities the court did not err in overruling defendant's instruc-

tion in the nature of a demurrer to the evidence. (2) The deceased was presumed to be in the exercise of due care. Lynch v. Railroad, 112 Mo. 433; Mathews on Presumptive Ev., 1; Mockowik v. Railroad, 196 Mo. 571; Hutchison v. Railroad, 161 Mo. 254; Riska v. Railroad, 180 Mo. 168; Weller v. Railroad, 164 Mo. 180; Sullivan v. Railroad, 117 Mo. 214. (3) The defense of contributory negligence is an affirmative defense, the burden of which rests on the defendant, and if it wanted such an instruction, it should have asked it. Not having done so, it cannot now be heard to complain. Brown v. Railroad, 108 Mo. App. 315; Bank v. Powers, 102 Mo. App. 415; Montgomery v. Railroad, 181 Mo. 477. (4) Instructions 3 and 4 asked by defendant were properly refused. Mockowik v. Railroad, 196 Mo. 571; Morgan v. Railroad, 159 Mo. 275; Kellny v. Railroad, 101 Mo. 74.

GRAVES, J.—Plaintiff for a short while, seven months, was the widow of one S. J. R. Turner, who was killed by one of the defendant's engines. After the institution of this suit, but prior to the trial, she married one King. She had judgment below for the statutory penalty of $5,000, and defendant appealed. The death of said Turner occurred within the corporate limits of Pattonsburg, Missouri. Plaintiff pleads that there was, at the point where the accident occurred, a continuous user of defendant's right of way and tracks by pedestrians, of which said user the defendant had full knowledge, and this the evidence tended to prove. The petition further pleads an ordinance of the city to this effect:

"Sec. 1. It shall not be lawful, within the limits of the city of Elm Flat, for any car, cars or locomotives propelled by steam power, to run at a rate of speed exceeding six miles per hour.

"Sec. 2. It shall not be lawful, within the limits

of the city of Elm Flat, for any car, cars or locomotives propelled by steam power, to obstruct any street crossing by standing thereon for longer than ten minutes. And when moving, the bell of the engine shall be constantly sounded within said limits, and if any freight car, cars or locomotives propelled by steam power, be backing within said limits, a man shall be stationed at the top of the car at the end fartherest from the engine to give danger signals. No freight train shall at any time be moved within the city limits without it be well manned with experienced brakemen at their posts, who shall be so stationed as to see the danger signals and hear the signals from the engine. The steam whistle of danger shall, in no case, be sounded in giving the usual signal for running trains."

It was shown that the city of Elm Flat by proper steps became Pattonsburg. It was claimed that deceased met his death by a backing engine which was run at a rate of speed in excess of the speed limit, and said train was run without ringing the bell and without being manned as required by the ordinance and without having a man stationed on the car "fartherest from the engine to give danger signals." The accident occurred about three o'clock in the afternoon. Deceased, who lived north and east of the city, was coming to town to make some purchases, among other things, some coal oil. For this oil he had a half gallon bottle which he was carrying in his hand. We mention this now, for it becomes material later. In Pattonsburg, the main track of defendant's railway runs east and west. There were two side or switch tracks, one to the north and one to the south of this main track and parallel therewith. The train in question had arrived from the west. On the north switch track were the stock yards or stock pens. The switch stand or connection of this south switch track with the main track was some five hundred feet east of

the depot, and that of the north switch track some four hundred and fifty feet east of the depot, which would make the connection of the north switch track with the main line some fifty feet west of the connection of the south switch track with the main line. Such was the situation to the east of the depot, and this is the only situation material to the issues of this case. It was in this vicinity that the evidence tended to show a continuous user over and across the tracks of defendant by pedestrians. The main portion of the town was to the south of these tracks, but there were some residences on the north side thereof, and those residents as well as people from the country continuously crossed these tracks. At one of the foot paths across them they had even constructed and maintained a foot-bridge across the barrow pit. When this freight train came in from the west, the engine was cut loose from the train, and was run down to the east of the switch stand for the north switch track, for the purpose of backing in upon this north track to get a car at the stock yards, which yards were to the west of and near the depot. Whilst this engine was standing there, with the switchman at the switch stand, the deceased came up and passed along the south side of the engine, and passing in front or to the west of the tender went on across the tracks north. As he did so the switchman called to him to look out for the engine. The train crew claimed to have seen him no more. There were two eye-witnesses to the accident. That is, there were but two who saw the engine strike deceased. Their exact testimony becomes important. Mrs. Phoebe Jane Miller, who lived in one of the houses to the north of the railroad tracks and who observed deceased as he passed by the tender of the engine and also observed the brakeman setting the switch, said:

"Q. When he walked across the track and gave

this signal, where was Mr. Turner? A. He was coming across here.

"Q. He was coming across? A. He was coming across to get on the north side of the railroad, just as fast as he could walk.

"Q. And they passed one another pretty close together? A. Yes, sir; the man that turned the switch went behind Mr. Turner, and he just come on and got across.

"Q. Did you see Mr. Turner before he started across the track? A. No, he walked down, was going towards town and seen the train was going to start out pretty soon and he came across over here on the north side.

"Q. You did not answer my question, you did not understand me; I want to get the point that Mr. Turner was when you first saw him? A. He was right over, opposite of the engine, coming on, as I tell you.

"Q. He come right by that engine? A. Yes, sir; when it was standing still.

"Q. And he come up there and he and the brakeman met one another about the time the engineer or the brakeman gave the signal to the engineer? A. Yes, sir.

"Q. Mr. Turner was across the track? A. Yes, sir.

"Q. West of this switch post? A. Five or six steps.

"Q. And at that point the engine was moving back, the tender? A. Yes, sir.

"Q. And what part now struck him? A. I did not see anything strike him at all, only it just looked like he was kind of daunted or something and started to fall, and this big wheel catched him, as I say, right across his bowels, turned him heels over head, till it

dragged him over and throwed him down and killed him.

"Q. You know this drive rod between the big wheels? A. Yes, sir.

"Q. Was it that that seemed to get hold of him? A. It was the one right in the middle of the big wheel.

"Q. His body was on the outside of the big wheel while it was turning over? A. Yes, sir.

"Q. And the tender had passed clear by him? A. Yes, sir.

"Q. At the time you saw this wheel catch hold of him? A. Yes, sir; the tender had passed him.

"Q. The tender had passed clear by him? A. Yes, sir.

"Q. Did you notice how many of those big wheels there was on the engine? A. I don't hardly recollect.

"Q. Was there two or three? A. I don't recollect, I believe two.

"Q. Was it the one next to the tender or the one back of that that had a hold of him? A. The one that was next to the tender.

"Q. You said something about his having a bottle on his arm? A. Yes, sir.

"Q. Which arm was that bottle on? A. He had it in this hand.

"Q. In his left hand? A. Yes, sir.

"Q. And he was going west? A. And I think he had the rope round his wrist.

"Q. You think the rope was round his wrist? A. Yes, sir.

"Q. Don't you think that drive rod or that wheel caught that bottle, as he was walking along and that is what turned him round? A. Yes, sir; I think that is kind of what daunted him, and catched him.

"Q. You think that also caught that bottle and rope round his hand? A. Yes, sir.

"Q. And wound him up in it? A. Yes, sir; wound him up and took him right on.

"Q. That is your idea of how the accident happened? A. Yes, sir."

Powell Royston, another witness, among other things said:

"Q. Mr. Royston, this accident, resulting in the death of Mr. Turner, state what you know and saw of that? A. Well, on the 17th of August last, about three o'clock it was, I believe, I seen Mr. Turner coming down the railroad track from the east; first saw him close to the car house, where the section men put their tools and the like; at this time there was a train in on the main track, and Mr. Turner was coming down west, and the engine had got loose from the train, and coming up on the main line and back on the side track with a car of stock. Mr. Turner was walking along when I first saw him, on the south side of the road, as well as I could discern it; I was laying in a hammock across from the railroad, and just as the engine went past, it seemed like he come across on the north side of the road, just opposite the other side, of where the switch was open, as well as I could tell, and he was walking along there, and the brakeman opened the switch, and the engine come along back, and Mr. Turner was walking west on the north side of the track, and seemed like when the engine run about the length of two rails, probably more, seemed like Mr. Turner made a step kind of over towards the track, or stumbled over or kind of stepped over, as he stepped over seemed like the tender catched him and knocked him down; that was about one rail west of the high switch; and it kind of picked him up, it seemed like, and dragged him along; there was blood about six foot from the east rail, on the rail; it dragged him along till it got all the length of two rails; and his foot sunk down into the guard rail, and it catched there; he laid

right back from the track with this leg mangled up here; run in here and cut here till you could see his liver; I ran to him, and he raised his arm up after I got to him.

"Q. Did you see anything about a bottle there? A. Yes, sir, he had a glass bottle, carrying along with him; that bottle was broke where the first blood was put on the rail."

In opposition to this testimony Leslie Pell, a witness, said:

"Q. Going east? A. Well, I was not going when the train hit him, I was standing still when the train hit him, watching the train.

"Q. Standing still watching the train when it hit him? A. Yes, sir.

"Q. And you did not see it hit him? A. No, sir.

"Q. How far was you standing from the track? A. I was standing right against the track.

"Q. Right against the track? A. Yes, sir.

"Q. On the north side? A. Yes, sir.

"Q. And looking right at the train? A. Yes, sir.

"By the COURT: Do you mean the train or engine? A. The engine.

"Q. Looking right at it? A. Yes, sir.

"Q. And never saw it hit him? A. No, sir.

"Q. Had you seen him at all? A. Yes, sir.

"Q. Where? A. Walking down the track towards the town.

"Q. Walking down the track towards the town? A. Yes, sir.

"Q. And still you never saw the engine hit him? A. No, sir.

"Q. Whereabouts did he cross the track? A. He did not cross it, he was walking down the track.

"Q. Whereabouts was he walking down the

track? A. He was walking in the main track till he come to the switch and turned off on the switch."

The brakeman testified among other things, as follows:

"Q. And from the time Mr. Turner crossed the track, where he went you don't know? A. No.

"Q. You never saw him, nor did you look for him any more, till they stopped you and you learned he had been run over and killed. A. I did not.

"Q. Where was his body run over; at what part of his body? A. The left part, the left leg and the main part of his trunk; left side and left arm was severed.

"Q. Did you look to see where the blood was; was it on the wheels of your tender? A. Yes, sir.

"Q. Where was it; which wheel? A. On the tank wheels; the two rear tank wheels, on the north side of the tank.

Q. *It was on the first wheel going west?* A. *Yes, sir.*

"Q. *That is where the blood was?* A. *The north side of the tank.*

"Q. *And on the first wheels of the tank going west?* A. *Yes, sir.*

"Q. That is what had run over his body? A. I suppose it was.

"Q. You could see the blood along there? A. Yes, sir.

"Q. And you did observe it both on the track and this wheel? A. I did not look at the track; I looked at the engine.

"Q. And there it was on the tender and wheels? A. On the tender and wheels; yes, sir."

There was also some evidence of a part of this broken coal oil bottle being found between the rails of the track. Complaint is made by the defendant as to certain evidence admitted over its protest, as well

King v. Wabash R. R. Co.

as to certain instructions given and refused by the court. With the view we have of the law of the case a more complete statement is not required. The complaints above will be noted in the course of the opinion.

I. The defendant complains of the action of the trial court in refusing to give its instructions numbered 3 and 4. These instructions read:

"3. The court instructs the jury that if they believe from the evidence that the deceased, Turner, was walking north of the north side track, and that the tender had passed him, and that as the engine was passing him he moved closer to the engine and was thereby struck by the wheels of the engine and was killed, then his death was due to his own carelessness and the plaintiff, Mrs. Cora King, is not entitled to recover in this action and your verdict must be for the defendant.

"4. The jury are instructed that if they believe from the evidence that the deceased was walking north of the north side track and as the tender approached near him he stepped in front of the tender and was immediately struck by it and killed, then his death was due to his own negligence and the plaintiff, Mrs. King, is not entitled to recover in this case, and you will find a verdict for the defendant."

To our mind this complaint is a just one. If the deceased was in a place of safety, and placed himself, by inadvertence or otherwise, immediately in front of a moving train or engine, and was thereby injured, the defendant is not liable. In other words, if the conduct of deceased, in a place of safety, was such that he put himself so suddenly in a place of danger, that the accident could not have been avoided, even if the defendant had complied with the ordinance in the strictest terms, then the plaintiff cannot recover on the bald proposition that the defendant had not complied

with the ordinance.   In such case the failure to com-
ply with the ordinance would not be the proximate'
cause of the injury.   The cause of the injury would
be the inadvertent act of deceased in taking the step
from a place of safety to one of danger.   The evidence
tends to show that this change was but the work of
an instant, thereby furnishing no time for warning.
[Kreis v. Railroad, 148 Mo. l. c. 328, and cases cited.]

The testimony of the two eyewitnesses would fully
authorize these two instructions.   The fact that there
might have been countervailing testimony does not
destroy the right of the defendant to have the theory
of the case, as shown by this testimony, properly sub-
mitted to the jury.   Whilst the violation of a city or-
dinance is denominated negligence *per se,* and if no
other facts appear to show that the injury was occas-
ioned otherwise than by such negligence, a plaintiff
would be entitled to recover, yet where the evidence of
the eye-witnesses tends to show that the violation of the
ordinance was not the proximate cause of the injury,
then a different proposition is presented.   Because an
ordinance has been violated does not authorize a recov-
ery, where a person was injured by acts of his own,
which, if known, could not have been prevented by
the   defendant,   had   it   complied   with   the   ordi-
nance.   Under   the   testimony   of   these   two   wit-
nesses had there been a dozen men on this tender to
warn plaintiff, there would have been no interim in
which to make such warning effective.   Under their
testimony the transit from a place of safety to a place
of danger was accomplished by a single step—the act
of a moment.   This act was that of the deceased.   He
being in a place of safety, to the north of the track,
even if the servants of defendant had been placed as
the ordinance required, they would not have been re-
quired to give warning until he put himself in a place
of danger, and there would have been no negligence

King v. Wabash R. R. Co.

unless there was time and opportunity to make the warning of some avail, and such servants with such time and opportunity failed to give it. Nor is the defendant the more liable because of the absence of its servants, unless by their presence, and a strict compliance with the ordinance duty, the injury could have been averted. Then and only then would the conduct of defendant have become the proximate cause of the injury. These two instructions properly presented a vital issue in this case. The one was based upon the testimony of one eyewitness and the other upon the testimony of another. Regardless of all other facts in the case, the defendant had the right to have this theory of the case submitted, and the refusal of these instructions was error.

II. Complaints are urged against the several instructions given for plaintiff. In so far as these instructions overlook and fail to recognize the doctrines hereinabove announced they are in error. Specific mention of each of them would be superfluous. And in so far as they utterly ignore the question of contributory negligence, if they do so ignore it, they are in error. The humanitarian doctrine, recognized by this court, as elsewhere, contemplates that contributory negligence is no bar to an action where the party injured is found in a place of danger, or by the exercise of ordinary care could have been found in a place of danger, in time to have prevented the accident and injury by the use of ordinary care. But where the facts of the case do not bring it within that rule, the doctrine of contributory negligence is not further disturbed. What we have said in the preceding paragraph will enable the plaintiff to properly redraft her instructions.

III. It is urged, and with much force, that a demurrer to the testimony should have been sustained.

It is urged that deceased was notified by the brakeman, whilst the brakeman was at the switch stand, to look out for the engine. That with this notice he deliberately walked up the north switch track and was injured, and therefore he cannot recover. There is much force in the contention. [Porter v. Railroad, 199 Mo. 82.] It should be remembered that the engine was on the main track when this warning was given. But as we see this case there is slight evidence that deceased was in the track when he was struck, i. e., the evidence of Pell, supra, and the fact that glass was found between the rails. Also the evidence of the brakeman as to blood on the north wheel of the tender, and the front wheel going west. This testimony and these circumstances are extremely weak, in the face of the testimony of the two eye-witnesses who saw the accident. It is hardly such testimony as would authorize the submission of the case to the jury. Pell is not as definite as he might be as to the location of the deceased. The case seems to have been tried below, judging from the instructions given and refused, on the theory that the mere failure of defendant to comply with an ordinance made out a case for the plaintiff. This theory was wrong, and what might be shown upon a re-trial, when tried upon a proper theory we can not surmise. As lawyers, we all know that when a trial court takes a certain theory of a case, pertinent evidence is ofttimes omitted. Such may have been the circumstances of this case. If counsel and court had been trying this case upon the proper theory, and the record before us was the result, we would promptly say that the demurrer to the evidence should have been sustained. However, we are not satisfied to reverse this case absolutely, for the reason that when tried upon the proper theory the evidence may be more fully developed. This we leave to the trial court. If nothing

very much more tangible appears than is found in this record, the case should not be submitted to the jury.

IV.  We are not impressed with the objection urged as to the testimony of the witnesses as to the rate of speed the engine was being run.  It is true that the witnesses did not see the engine at the time and place of the accident, but saw it at a point further west upon the same trip.  This alone would have been insufficient.  But the testimony of the brakeman was to the effect that it had the same rate of speed throughout the trip from the switch stand to the stock yards, which taken with the other testimony renders the latter competent.  The two must be and were no doubt considered together.  We say this much in view of the fact that the case must be retried.

For the reason aforesaid this cause is reversed and remanded to be tried in accordance with the views herein expressed.

*Lamm, J.,* concurs *in toto; Valliant, P. J.,* and *Woodson, J.,* concur in the result and all of the opinion except that portion of paragraph three which comments upon the sufficiency of the evidence in the present record to authorize the submission of the case to the jury.  They are of opinion that the evidence in the present record was sufficient to authorize the trial court to submit the case to the jury upon proper instructions.