# MARGARET WACK, Respondent, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Appellant.

### St. Louis Court of Appeals, June 3, 1913.

1. **TRIAL PRACTICE: Demurrer to Evidence: Defendant's Evidence Aider to Plaintiff's Case.** The question of whether a verdict should be directed for defendant should be determined from a consideration of defendant's evidence as well as plaintiff's, where defendant's evidence aids plaintiff's case.

2. **RAILROADS: Crossing Accident: Failure to Lower Gates: Sufficiency of. Evidence.** In an action against a railroad company for the death of a pedestrian, caused by his being struck by a train at a street crossing, the negligence counted on being the failure of defendant to close the gates across the west side of the crossing, in violation of a municipal ordinance, evidence that decedent was seen west of the tracks, about three blocks from them, an hour before the accident, and that he was standing facing east, as though he were going in that direction, immediately before he was struck, *held* sufficient to warrant an inference that he came through the open gate, from the westward, to the place where the accident occurred.

3. **EVIDENCE: Motives, Feelings and Natural Instincts.** Juridical tribunals proceed according to the rationale of human experience, and in all questions touching the conduct of men, motives, feelings and natural instincts are allowed to have their weight and to constitute evidence for the consideration of courts and juries.

4. **NEGLIGENCE: Evidence: Presumptions.** As a general rule, in the absence of evidence to the contrary, the law presumes that every person exercises ordinary care for his own safety.

5. **RAILROADS: Contributory Negligence: Failure to Look and Listen.** While it is true that one must look and listen for trains before going upon a railroad track, yet if he looks and listens immediately before going upon the track, and sees no train approaching, it is unusual to declare him guilty of negligence as a matter of law for not looking a second time, while upon the track, but, rather, the question concerning that matter is frequently for the jury.

6. ———: ———: ———: **Crossing Gates.** The rule requiring one about to go upon a railroad track at a street crossing to look and listen for trains is modified where the crossing

is usually guarded by gates and a watchman, so as to permit pedestrians to rely, in a measure, on the gates being closed if a train is approaching.

7. ———: Crossing Accident: Failure to Lower Gates: Contributory Negligence. In an action against a railroad company for the death of a pedestrian, caused by his being struck by a train at a street crossing, it was shown that, after crossing the first of three parallel tracks, he stopped upon the second track, waiting for a train on the third track to pass, and that while in this position, he was struck by a train running on the second track. It was further shown that the crossing gates were not closed, as required by a municipal ordinance. *Held*, that decedent presumably looked and listened for trains before going upon the first track, and that the evidence warranted an inference that, on account of weather conditions, he could neither see nor hear the approaching train; *held, further*, that decedent was, in a measure, relieved of the obligation to look and listen by the fact that the crossing gates were not closed, operating as an assurance that no train was approaching, and, therefore, he should be regarded, after having found his way safely across the first track and upon the second, where his progress was stopped by a train on the third, as having exercised due care in the first instance; and hence it is *held* that the question of whether decedent was guilty of contributory negligence was for the jury.

8. NEGLIGENCE: Violation of Municipal Ordinance: Right of Recovery. The violation of a city ordinance is negligence *per se*, and where injury or death is directly traceable to such violation as within the range of reasonable probabilities, a right of recovery exists.

9. RAILROADS: Crossing Accident: Failure to Lower Gates: Proximate Cause: Sufficiency of Evidence. In an action against a railroad company for the death of a pedestrian, caused by his being struck by a train at a street crossing, the negligence counted on being the failure of defendant to close the gates across the street, as required by a municipal ordinance, *held* that the evidence tended to prove that decedent came to his death as a result of defendant's failure to keep a watchman at the crossing and to close the gates, so as to make the question of defendant's liability one for the jury.

10. ———: ———: ———: Contributory Negligence: Sudden Peril. In an action against a railroad company for the death of a pedestrian, caused by his being struck by a train at a street crossing, a switchman, who was called as a witness by defendant, testified that decedent stepped backward from between two parallel tracks and immediately in front of the train, which was moving on one of these tracks. This witness.

had testified at the coroner's inquest that decedent was standing on the track upon which the train was running, and not between the two tracks, when witness first saw him. *Held,* that, notwithstanding the fact that this witness was the only eyewitness of the accident, yet in view of the conflict in his testimony, it was for the jury to determine whether or not decedent suddenly left a place of safety and stepped immediately in front of the moving train. *Held, further,* that even if it were true that decedent suddenly left a place of safety and stepped immediately in front of the moving train, nevertheless in view of the fact that there was a moving train on each of these tracks and that there was a clearance of only two feet between the trains, the act of decedent in stepping backward in front of the suddenly approaching train would not be condemned as contributory negligence as a matter of law, since the conduct of one acting under excitement in such a situation, when suddenly alarmed, is not to be declared negligence as a matter of law, but is always a question for the jury.

11. **TRIAL PRACTICE: Demurrer to Evidence: Uncontradicted Evidence.** In every instance, unless the fact be admitted, the matter of the credibility of the witnesses and the weight to be given to their testimony is for the jury to determine, and this is true even though their testimony be not contradicted by other witnesses.

12. **APPELLATE PRACTICE: Review: Rejection of Documentary Evidence.** A ruling of the trial court excluding documentary evidence will not be reviewed, on appeal, unless the documents sought to. be introduced are preserved in the bill of exceptions.

13. **APPELLATE PRACTICE: Trial Practice: Argument of Counsel: Sufficiency of Objection.** In an action against a railroad company for the death of a pedestrian, caused by his being struck by a train at a street crossing, the negligence counted on being the failure of defendant to close the gates, as required by a municipal ordinance, counsel for plaintiff, in his closing argument to the jury, said: "But what do they do? They violate the law. Raise the gates. No watchman there. To Jerusalem with the law. To Hades with the law. We are a big corporation" (naming it). Counsel for defendant then said: "I except to that statement." And after counsel for plaintiff stated that he would withdraw it, the court said: "The jury will pay no attention to the statement regarding the corporation, but will pay attention to the evidence." *Held,* that the action of the court was sufficient, so far as the remark about the corporation is concerned, and that, if other portions of the statement were objectionable, they were not

175 Mo. App. 8

sufficiently pointed out by defendant at the time, to render them reviewable on appeal.

14. **DEATH BY WRONGFUL ACT: Measure of Damages: Instructions.** In an action for death by wrongful act, under Secs. 5426, 5427, R. S. 1909, the instruction on the measure of damages *held* sufficient; following Browning v. Railroad, 124 Mo. 55.

Appeal from St. Louis City Circuit Court.—*Hon. William B. Homer,* Judge.

AFFIRMED.

*R. T. Railey* and *James F. Green* for appellant.

(1) The evidence in the case was insufficient to authorize a recovery on part of plaintiff, and the court should have so declared. Warner v. Railroad, 178 Mo. 133; Gumm v. Railroad, 145 Mo. App. 339; Green v. Railroad, 192 Mo. 143; Laun v. Railroad, 216 Mo. 579; Waggoner v. Railroad, 152 Mo. App. 179; Smart v. Kansas City, 91 Mo. App. 586; Payne v. Railroad, 136 Mo. 562; Sanguinette v. Railroad, 196 Mo. 466; Swearingen v. Railroad, 221 Mo. 660. (2) Plaintiff's instruction on the measure of damages was erroneous. Calcaterra v. Iovaldi, 123 Mo. App. 347; Marshall v. Mining Co., 119 Mo. App. 273; Barth v. Railroad, 142 Mo. 559; Schaub v. Railroad, 106 Mo. 93; Porter v. Railroad, 71 Mo. 81; Rains v. Railroad, 71 Mo. 164; R. S. 1909, sec. 5426; Moyes v. Railroad, 158 Mo. App. 461. (3) The court committed error in refusing to permit defendant to prove that plaintiff's husband had been adjudged a vagrant. Defendant had the right to show the actual pecuniary loss to plaintiff on account of the death of her husband. R. S. 1909, sec. 5426; Darks v. Grocer Co., 146 Mo. App. 256; Standlee v. Railroad, 60 S. W. 781; McElwaine v. Railroad, 79 N. Y. State 426; Alexander v. Railroad, 144 Ala. 257; Marshall v. Mining Co., 119 Mo. App. 273. (4) The argument of plaintiff's counsel was improper and

prejudicial, and was not sufficiently rebuked by the court. Beck v. Railroad, 129 Mo. App. 24; Norris v. Railroad, 144 S. W. 790; Neff v. City of Cameron, 213 Mo. 350; Haynes v. Trenton, 108 Mo. 123; Fatham v. Tumilty, 34 Mo. App. 236.

*Thomas J. J. Stanton* and *David Goldsmith* for respondent.

(1) The causal connection between the neglect alleged and the injury sued for sufficiently appeared. Ellis v. Railroad, 89 Mo. App. 241; Pearson v. Railroad, 33 Mo. App. 543; King v. Railroad, 211 Mo. 14. (2) The claim, that the evidence conclusively establishes contributory negligence on the part of the decedent's husband, is not well founded. Montgomery v. Railroad, 181 Mo. 507; Railroad v. Volan, 81 S. W. 130; McNamara v. Railroad, 126 Mo. App. 152; McGrath v. Railroad, 63 N. Y. 529, 530; Railroad v. Hutchinson, 120 Ill. 587; Giddings v. Railroad, 133 Mo. App. 611, 612. (3) Error in the exclusion of evidence does not appear. (a) The alleged error cannot be reviewed because the excluded evidence does not appear from the abstract or bill of exceptions. Rieger v. Welles, 110 Mo. App. 164; Railroad v. Capek, 64 Ill. App. 503; Estes v. Nell, 140 Mo. 652; Slawson v. Transportation Co., 99 Wis. 20; Ridgley v. State, 75 Md. 510; Ring v. Lawless, 190 Ill. 520; Betzler v. James, 227 Mo. 387. (b) Even if the excluded evidence properly appeared to be as claimed by the appellant, still the exclusion of it could not be held to be erroneous, because it includes, and indeed consists mainly of, the record of the conviction and sentence of the plaintiff's husband, which was incompetent. Hidy v. Murray, 101 Iowa, 65; Hosley v. Black, 28 N. Y. 438; Cressey v. Kimmel, 78 Ill. App. 27; Shewalter v. Bergman, 123 Ind. 255; Pike Co. v. Hanchey, 119 Ala. 36; Graham v. Graham, 84 Ind. 325; Tumlin v. Parrott, 82 Ga. 732; State v. Bradnack, 69 Conn. 212;

Carlisle v. Killebrew, 89 Ala. 329; Martin v. Blattner, 68 Iowa, 286. (c) And even if this evidence properly appeared, the exclusion of it would not be erroneous, since the evidence was irrelevant. (4) The remarks of plaintiff's counsel in his address to the jury, are not ground for the reversal of the judgment in this cause. Spengler v. Transit Co., 108 Mo. App. 329; Cicardi v. Transit Co., 108 Mo. App. 470; Harless v. Railroad, 123 Mo. App. 333; Norris v. Railroad, 144 S. W. 790. (5) The instruction given with respect to plaintiff's damages was correct. Browning v. Railroad, 124 Mo. 55; Barth v. Railroad, 142 Mo. 551, 552; Minter v. Bradstreet Co., 174 Mo. 491.

NORTONI, J.—This is a suit for damages accrued to plaintiff, a widow, under the statute on account of the wrongful death of her husband through the negligence of defendant in omitting to close the gates at a street crossing on its railroad. Plaintiff recovered, and defendant prosecutes the appeal.

It appears plaintiff's husband was run upon and killed at the crossing of Barton street, a public thoroughfare in the city of St. Louis, and defendant's railroad tracks. The petition sets forth and counts upon an ordinance of the city requiring railroad companies to install and maintain, at the crossings of all public streets with their railroads, gates to be lowered as a warning to persons in the street when the railroad locomotives or trains are approaching the crossing. The ordinance further requires that such gates shall operate either automatically, or that a watchman shall at all times be in charge, to the end of lowering the gates before a locomotive or train approaches. It is admitted the ordinance prevailed and enjoined on defendant the requirements mentioned, and it appears defendant had installed the gates at Barton street crossing in accordance with the ordinance. The gates were not automatic, and were operated during the day-

time by a watchman. But at the time plaintiff's hus-
band came upon the track and was killed—about ten
o'clock at night—no watchman was in charge, and the
gates were allowed to be open. At the point in ques-
tion, defendant maintained several tracks. The evi-
dence tends to prove—that is, it affords a reasonable
inference to the effect—that plaintiff's husband came
upon the railroad crossing from the west, and was
killed on the second track through being run upon by
defendant's switch engine, which was moving south
but backwards. The gates on the west side of the rail-
road track were not closed, and it is to be inferred the
decedent walked upon the crossing there, for he was
seen upon the crossing as if going east an instant be-
fore the locomotive ran upon him.

In approaching the railroad crossing from the
west, the first track in Barton street is a switch or
sidetrack, and the second the defendant's southbound
main line, while the third is its northbound main line.
Plaintiff's husband was seen at the corner of Second
and Trudeau streets, about three blocks north and
west of the railroad crossing on Barton street, from
half past eight to nine o'clock in the evening. No one
mentions having seen him thereafter until an instant
before he came to his death on defendant's southbound
main line, or second track. That was about ten o'clock
in the evening, or possibly a few minutes thereafter.
All of the witnesses say the night was very dark and
stormy. It was snowing and a blizzard prevailed. One
and all agree that the wind was high, and it appears
that several lights had been extinguished because of
the blizzard. One of defendant's witnesses testified
that the blizzard prevailed with such force as to put
out the street light at the crossing of Barton street
and the railroad. It appears that a locomotive and
train of cars were moving slowly and backwards to
the northward on the third track from the west—that
is, defendant's northbound main line—and that the de-

cedent was standing upon the crossing facing eastward
as though he was waiting for the train to pass beyond
so he could move forward in Barton street to the east
of the track. While thus standing, defendant's switch
engine, running backwards also, with its tender fore-
most, came from the north, going south on the second
track from the west—that is, the southbound main line
—and ran upon and killed plaintiff's husband. It is
quite clear from the evidence in the record—and, in-
deed, from all of it, that introduced by defendant as
well as by plaintiff—that, on account of the darkness
and the storm, it was difficult to discern objects for
more than a very short distance. Then, too, it appears
the locomotive on the third track, which was pushing
a train backwards, was very near the crossing and
emitting steam copiously, which, it is said by defend-
ant's switchman, further contributed to obscure the
view thereabout. Besides the view being obscured by
the combination of the extreme darkness, the prevail-
ing blizzard, which included drifting snow, and the
steam emitted from the locomotive on the third track,
it is to be inferred the noises afforded by the high wind
and the escaping steam impeded the sense of hearing
as well.

In this situation and in such circumstances de-
fendant's switch engine, running light—that is to say,
single and alone without cars attached—came from
the north, backing down the main line and upon the
crossing, according to the evidence most favorable to
plaintiff, at about twelve miles per hour. It appears
the switch engine carried a headlight on the rear, or
south end, of its tender—that is, on the foremost end
of the tender as it approached the crossing. But this
headlight was an oil light only. The locomotive was
not equipped with electric or gas lights, as is quite
usual, and, as before said, the street light had been ex-
tinguished by the wind and blizzard. However, be-
sides the oil headlight on the south end of the locomo-

tive tender, a switchman stood on either end of the footboard on the south of the tender, each of whom held an oil railroad lantern in his hands. Though it appears plaintiff's husband, the decedent, was standing at the time either in the center of the second track on which the locomotive was approaching or between that track and the third one, awaiting the train then occupying the third track to move out of his way, one of these switchmen on the footboard of the locomotive says he did not see him at all. The other switchman, Yaker, who was standing on the east end of the footboard at the south end of the tender on the engine which ran upon decedent, says that he first saw him when the tender was not more than from three to five feet away. It appears this witness testified at the coroner's inquest the day following the death that decedent was standing in the center of the southbound main line—that is, the line on which the locomotive which ran upon him approached; but at the trial, though the same witness said he did not see decedent until the tender was within from three to five feet of him, he said, too, decedent was standing between the two tracks when first seen, and not on the main line. Touching this matter, the witness said on the trial of the case: "I seen a man standing on the crossing, and I says to the engineer, 'Stop! There's a fellow there.' He was standing in between the two tracks, you understand, and if he had stayed there he would have been all right; he'd a been in the clear; he would have been safe . . . Q. Where was he standing, you say, when you first saw him? A. Why, he was standing there trying to get by, going east, I expect. He was standing next to the cars, and then I hollered and he got scared, and instead of him staying where he was he backed up and fell right in front of my foot and fell under. . . . Moved back and fell right in front of my leg, and I was going to shove him out that way with my foot when he fell. . . . He just

stepped one step too far. . . . Yes, sir, I hollered 'Look out!' . . . He had his back towards us. When I hollered he looked around, and he looked the other way again and stepped back and just catched him. . . . Why he just no more than turned around just as we hit him, just sort of turned around and backed out with one leg and went right under.''

It appears that the space between the two tracks where this witness says decedent was standing when he "hollered" at him was about seven feet in width— that is, between the outmost rails of the two parallel tracks—and that the protruding sides of passing trains occupy two and one-half feet of space outside and beyond the rails. From this it is clear enough that if decedent was standing between the tracks and continued there while the locomotive passed, there would have been but two feet of space between the train on the third track and the locomotive on the second track.

It is said the court should have directed a verdict for defendant because the evidence does not reveal her husband was run upon and killed at the crossing of Barton street. It is true the evidence introduced by plaintiff showed her husband was taken from beneath the engine about six feet south of the crossing, but with this fact we are not now concerned. Defendant introduced an abundance of evidence in aid of plaintiff's case, and its witness, the switchman Yaker, fixed the point of collision definitely on the crossing. Though the evidence introduced by plaintiff alone is meager, the question for consideration here, in view of the fact that defendant introduced evidence as well, is the sufficiency of all of the evidence introduced by both parties, to sustain the finding and judgment. [See Klockenbrink v. St. Louis & Meramec River R. Co., 172 Mo. 678, 72 S. W. 900; Jennings v. St. Louis, I. M., etc., R. Co., 112 Mo. 268, 20 S. W. 490.]

It is urged the court should have peremptorily directed a verdict for defendant at the conclusion of all

of the evidence, for the reason it does not appear decedent came upon the tracks from the west where the gates were not closed, or that he was traveling eastward on Barton street at the time. It is admitted that but little more than an hour before decedent was seen on the west side of the tracks about three blocks away at Second and Trudeau streets in a saloon, and defendant's switchman testified pointedly that he was facing east on the crossing of Barton street as though waiting for the train to pass, and as though going east, when the light engine glided down upon him from the north. From these established facts in the case, it was competent for the jury to infer that he was traveling east on Barton street, and therefore came upon the crossing from the westward, where his progress was impeded at the third track by the slowly moving train thereon, which may not have been observed theretofore because of the darkness prevailing and the extreme conditions of the weather. According to the course of prior decision, such conclusion is not the result of mere conjecture, but rather a reasonable inference of fact in the circumstances of the case. [Buesching v. St. Louis Gas Light Co., 73 Mo. 219, 39 Am. Rep. 503.] It is certainly not to be presumed that decedent was wandering around in the railroad yards on such a night in the prevailing blizzard and darkness, but rather to be inferred that he was crossing the railroad tracks to the eastward, as stated by defendant's switchman. Juridicial tribunals proceed according to the rationale of human experience. There can be no doubt that, in all questions touching the conduct of men, motives, feelings and natural instincts are allowed to have their weight and to constitute evidence for the consideration of courts and juries. [Johnston v. Frisco, 150 Mo. App. 304, 319, 130 S. W. 413; Meadows v. Life Ins. Co., 129 Mo. 76, 31 S. W. 578, 50 Am. St. Rep. 427; Allen v. Willard, 57 Pa. 374.]

It is true one must look and listen before entering upon a railroad track, for such tracks are in and of themselves signals of danger to all persons *sui juris*. But here it appears plaintiff's husband had crossed the first track in entire safety and came to his death while upon the second one, and this, too, while in waiting for the train on the third track to pass on. As a general rule, in the absence of any evidence to the contrary, the law presumes that every person exercises ordinary care for his own safety. [Buesching v. St. Louis Gas Light Co., 73 Mo. 219, 39 Am. Rep. 503; Dunlap v. Mallinckrodt Chemical Works, 159 Mo. App. 49, 139 S. W. 828; Johnston v. Frisco, 150 Mo. App. 304, 130 S. W. 413.] So it is, looking backward from the position of decedent on the second railroad track where he came to his death, it must be presumed that he looked and listened before entering upon the first one. After one looks and listens and sees no approaching train immediately before going upon the track, it is unusual to declare, as a matter of law, that he is guilty of negligence for not having looked and listened a second time while upon the track, but rather the question concerning that matter is frequently one for the jury. [See Giddings v. Chicago, R. I., etc., R. Co., 133 Mo. App. 610, 113 S. W. 678; Elliott on Railroads, (2 Ed.), sec. 1166a.]

Moreover a pedestrian approaching a railroad crossing where gates and a watchman are to be kept under the requirements of law, has a right to assume and rely, in a measure, on the fulfillment by the railroad company of the obligation so imposed upon it. Such gates and watchman are required by the ordinance, to the end of giving warning to those in the street approaching the railroad. If the gates are lowered, the pedestrian understands danger is imminent from an approaching train; on the other hand, if the gates are open, he understands, through an implied invitation on the part of the railroad company to enter,

that it is safe for passage across the tracks. [See Montgomery v. Mo. Pac. R. Co., 181 Mo. 477, 507, 79 S. W. 930.] The rule in regard to the duty of a person about to go upon a railroad track at a public crossing to look and listen for trains is modified, therefore, when the crossing is one usually guarded by such gates and a watchman, so as to permit a pedestrian approaching the track to rely, in a measure, on the conditions of the gates when found open or the absence of other warning from the watchman. [Edwards v. Chicago & Alton R. Co., 94 Mo. App. 36, 44, 67 S. W. 950; McNamara v. Chicago, R. I., etc., R. Co., 126 Mo. App. 152, 103 S. W. 1093; Jennings v. St. Louis, I. M., etc., R. Co., 112 Mo. 268, 20 S. W. 490.] Therefore, though it be that one is required to look and listen before entering upon the tracks it would seem that besides being relieved of this obligation, in a measure, by the fact of the open gates operating as an invitation to enter and an assurance that no train was approaching, he should be regarded, after having found his way safely across the first track and into the second and his course impeded by the movement of a train on the third, which it appears was backing to the northward before him, as having exercised due care thereabout in the first instance. Such is the rule of decision' established by the Supreme Court. [Weller v. Chicago, M., etc., R. Co., 164 Mo. 180, 64 S. W. 141, 86 Am. St. Rep. 592; s. c., 120 Mo. 635, 650, 23 S. W. 1061, 25 S. W. 532; Riska v. Union Depot R. Co., 180 Mo. 168, 79 S. W. 445; Powers v. St. Louis Transit Co., 202 Mo. 267, 100 S. W. 655.]

It is frequently said the violation of a city ordinance reveals prima facie negligence *per se*. It is certain that when the injury or death may be traceable directly to such violation, as within the range of reasonable probabilities, a right of recovery appears. [See King v. Wabash R. Co., 211 Mo. 1, 14, 109 S. W. 671.] It would seem that the facts and circumstances in evi-

dence tend, with great force, to prove that plaintiff's husband came to his death as a result of the failure of defendant to observe its obligation to maintain a watchman at the place and close the gates across Barton street at the time in question. The night was dark and stormy, the street light at the place had been extinguished by the high winds, and the snow was being blown thereabout. From the fact such extreme darkness prevailed that defendant's switchmen were unable to discern the decedent on the track, even with the aid of two lanterns and the oil headlight on the engine, until within five feet of him, it is to be inferred that a pedestrian could not see an approaching engine for any considerable distance, when equipped only with a dim oil headlight. It is a matter of common knowledge that rear-end collisions frequently occur on the railroads in such blizzards because those in the locomotive cannot see the tail lights of the train before them. It was certainly competent for the jury to find that plaintiff's husband, looking either up or down the railroad track, could not discern the approaching locomotive, which was, no doubt, some distance away; for it was said by a witness riding thereon to be running at twelve miles per hour when he entered upon the track. It was competent, too, for the jury to find that he could not hear its approach after going upon the track because of the high wind and the noises incident to the escaping steam from the locomotive just south of the crossing, which was pushing a train slowly to the northward on the third track immediately in front of him. All of this evidence tended to render the question of contributory negligence one for the jury.

But it is said the evidence of the switchman, Yaker, is—and he alone saw decedent—that he stepped immediately backward from between the two tracks to his death in front of the tender of the switch engine. It is true Yaker so testified, but he was confronted with

his testimony given before the coroner the day follow-
ing the death of plaintiff's husband, and it was shown
thereby that he then stated under oath decedent was in
the center of the track on which the locomotive was
moving, and not between the two tracks at all. Ob-
viously this matter was for the jury. Touching the
matter of decedent's stepping backwards from between
the two tracks immediately in front of the approaching
engine, if it be true, as Yaker testified at the trial, it
is to be said that that question, too, was for the jury.
The suggestion is, plaintiff's husband was then in a
place of safety, and stepped backwards in front of the
engine to his death; therefore the proximate cause, in
part at least, is to be attributed to such backward step
on his part, and not to the matter of the open gates.
According to the evidence, the outside rails of the two
tracks were seven feet apart. Passing trains occupied
two and one-half feet each outside of the rails; there-
fore but two feet intervened for one to stand if he re-
mained in that situation. Obviously such could not be
regarded as a place entirely safe, and, furthermore,
the conduct of one acting under excitement in such a
situation when suddenly alarmed is not to be declared
as a matter of law, but is always a question for the
jury, that it may be tested according to the precepts
of human experience. It seems decedent was stand-
ing facing eastward, waiting for the train to move on,
that he might continue his journey. The locomotive on
the third track and in front of him was slowly backing
some twenty cars to the northward. The locomotive
itself was immediately south of the crossing and emit-
ting great clouds of steam. The view was thus ob-
scured so as to interfere with the the vision, and it is
to be inferred decedent's hearing was impeded, too.
While thus standing, the light switch engine came back-
ing down from the north, and when it was within five
feet of him, the switchman, Yaker, "hollered," "Look
out!" and, according to the witness, "scared" the dec-

edent. The witness says, ''Why, he just no more than turned around just as we hit him, just sort of turned around and backed out with one leg and went right under.'' Obviously in such a situation, and under the stress of such circumstances, it would be highly unjust for the court to declare as a conclusion of law that the act of decedent in thus moving about under the excitement incident to the occasion should be treated as either the proximate or a concurring cause of his injury. It is clear enough that the defendant was negligent. The question as to whether decedent's act in so turning about and taking the step referred to was careless or prudent in the circumstances stated was for the jury beyond doubt. Unless it was a careless act when viewed in the light of human experience and measured by the conduct of the ordinarily prudent man whom the law sets up as a standard with respect to such matter, such act should not be utilized as either a proximate or concurring cause of the injury entailed. Touching this matter, no one save the jury is competent to answer. [Garrett v. Wabash, 159 Mo. App. 63, 139 S. W. 252.]

Defendant introduced evidence tending to prove plaintiff's husband was seen between 8:30 and 9 o'clock at a saloon in an intoxicated condition. It is said he was able to walk, was not quarrelsome, but jolly and joking. No witness contradicted this evidence, though it is by no means admitted to be true. It is urged plaintiff ought not to be entitled to recover here, for the reason it is shown beyond question her husband was therefore incapable of exercising ordinary care for his own safety, and, no doubt, recklessly went upon the tracks in the face of danger. If the fact of intoxication were conceded to be true, the argument would inhere with much force, but not so where it appear it is merely the evidence of witnesses uncontradicted at the trial. Obviously this matter, too, was for the jury. [See Stout v. City of Columbia, 118 Mo. App. 439, 94

S. W. 307.]   Though it be that evidence is given by
witnesses on a trial, and not contradicted by others,
it is not within the province of the court to assume and
declare the truth of such statements.    In every in-
stance, unless the fact be admitted, the matter of the
credibility of the witnesses and the weight and value
to be given to their testimony concerning the matter
of which they speak is for the jury to determine, and
this is true though such evidence be not contradicted
by other witnesses.   [See Gannon v. Laclede Gas Light
Co., 145 Mo. 502, 46 S. W. 968, 47 S. W. 907, 43 L. R.
A. 505.]   The court did not err in referring the case
to the jury.

The suit proceeds under the wrongful death stat-
ute (Secs. 5426, 5427, R. S. 1909); that is, under the
statutes other than the penal section.   On the theory
that these sections are compensatory in character and
authorize a recovery as by way of compensation for
the loss, defendant sought to introduce in evidence a
record and judgment of the court of criminal correc-
tion of the city of St. Louis, revealing an adjudication
to the effect that plaintiff's husband was declared a
vagrant about six months before.   On objection the
court excluded this offer of proof.   The offer is as fol-
lows:   "I next offer in evidence the proceedings had
in the court of criminal correction of this city Septem-
ber, 1907, State against Nicholas Wack, prosecution
against him for vagrancy and failing to support his
family, together with the adjudication—conviction on
his plea of guilty to that offense."   In a further state-
ment concerning the offer, counsel said, too, the com-
plaint was made at the instance of the plaintiff wife,
on the ground that her husband failed to support his
family.   This is all that appears in the record con-
cerning the matter, save that the court rejected the
offer.   It is urged this was error, but the question is
not before us for a review.   Though the offer of proof
appears, and its rejection and an exception, the record

referred to is not incorporated in the bill of exceptions, and we are unadvised as to its contents, and therefore are unable to determine the question of its competency. It is said in a recent standard authority that "documentary evidence will be presumed to have been rightly rejected when it is not properly set out and presented to the appellate court." [See Am. & Eng. Ency. of Law & Pr. 393, 394.] There may have been some valid reason appearing on the face of the record itself which rendered it incompetent. As the record is not incorporated in the bill of exceptions, we are unable to determine the matter. [See Ridgely v. State, 75 Md. 510, 23 Atl. 1099; Ring v. Lawless, 190 Ill. 520, 60 N. E. 881. See, also, Estes v. Nell, 140 Mo. 639, 41 S. W. 940; Betzler v. James, 227 Mo. 375, 126 S. W. 1007.]

In the argument to the jury, counsel for plaintiff used the following language, which was excepted to by defendant. The statement, exception, and the action of the court thereon will appear from the excerpt of the record as follows: "Mr. Stanton: Now, the evidence here shows that they absolutely violated the law when they had no automatic gates there. The law says they shall have automatic gates, or that they shall have a watchman there who shall open and close these gates upon the approach of every train. Is there any evidence here that those gates were closed on that night in question, or that there was ever a night watchman stationed there for the purpose of preventing you or I from being killed, when we have a right to walk across the tracks at Barton street, a public street of the city of St. Louis? If they had complied with that law, you would not have been impaneled here to try this case; old Nicholas Wack would have been alive to-day, to take care of his wife and eight children, healthy and strong with the sun shining on him, enjoying the same life that you and I enjoy here to-day. If they were closed down, Nicholas Wack never

could have got on those tracks. If a watchman had been there attending to his duty, it would have been impossible for him to have gotten on those tracks. But what do they do? They violate the law. Raise the gates. No watchman there. To Jerusalem with the law. To Hades with the law. We are a big corporation, the St. Louis, Iron Mountain & Southern Railway Company. Mr. Green: I except to that statement. Mr. Stanton: I will withdraw it. The Court: Of course, the jury will pay no attention to the statement regarding the corporation, but will pay attention to the evidence." It appears the portion of the remarks excepted to were not pointed out specifically at the time, and the court evidently understood counsel objected only to the reference to the defendant as a big corporation. Besides the fact that plaintiff's counsel withdrew the statement, the court acceded to the view that it was objectionable, and instructed the jury then and there to pay no attention to that portion of it regarding the corporation, but rather to pay attention to the evidence. This we regard as sufficient so far as that matter is concerned, and if other portions of the statement were objectionable, they were not sufficiently pointed out by defendant at the time in order to render them reviewable here. [See Torreyson v. United Railways Co., 164 Mo. App. 366, 145 S. W. 106.]

It is urged plaintiff's instruction on the measure of damages is erroneous, but it is obviously sufficient, and has been approved by the Supreme Court in Banc in a suit by a widow for the death of her husband under these statutes in the case of Browning v. Wabash R. Co., 124 Mo. 55, 71, 72, 27 S. W. 644.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.